Sandra LARSON, Appellant,

v.

FAMILY VIOLENCE AND SEXUAL ASSAULT PREVENTION CENTER OF SOUTH TEXAS, et al., Appellees.

No. 13–00–093–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 29, 2001.

Rehearing Overruled Jan. 31, 2002.

508

**510**

---

David Kenneth Sergi, Attorney At Law, William T. Deane, Sergi & Deance, P.l.l.c., San Marcos, for Appellant.

Carlos Villarreal, James F. McKibben Jr., Barger, Hermansen, McKibben & Villarreal, Sandra Sterba-Boatwright, Meredith, Donnell & Abernethy, Corpus Christi, for Appellees.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

### OPINION

RODRIGUEZ, Justice.

Appellant, Sandra Larson, appeals from a summary judgment dismissing her causes of action against appellees, Family Violence and Sexual Assault Prevention Center of South Texas, The Woman's Shelter, Inc., Ann Hennis, Catrina Steinocher, Tracy Harting, Marci Gady, Laura Garza–Jimenez, Nita Carrell, and Linda McGowan. By three points of error, appellant generally contends that the district court erred in granting appellees' motion for summary judgment because 1) appellees failed to prove they were entitled to summary judgment as a matter of law, 2)

appellees' evidence was inadequate to support the summary judgment, and 3) the court erred in sustaining appellees' objections to appellant's affidavit. We affirm.

■ Appellant was employed as executive director of the Woman's Shelter, Inc. (Shelter). Part of her job responsibilities included maintaining the operational success and financial responsibility of the Shelter. Appellant hired Cynthia Alaniz (Alaniz) to serve as the Shelter's financial director. The Shelter began receiving late notices from various creditors and having financial trouble. It was later discovered that Alaniz failed to pay quarterly payroll taxes to the Internal Revenue Service (IRS). The Shelter conducted a financial audit and discovered that the Shelter had accrued a debt with the IRS in the amount of $169,000.00. Alaniz was terminated. Appellant was placed on administrative leave and subsequently terminated as executive director. The IRS placed a tax lien on the Shelter's property as a result of the failure to make payroll tax payments. News of the tax lien reached local media and several stories were featured in the local newspaper and on television. On March 2, 1998, appellant filed suit against appellees for wrongful termination, breach of contract, tortious interference with contractual relationship, defamation, and intentional infliction of emotional distress.[1] On October 1, 1999, appellees filed a tradiional motion for summary judgment and in the alternative, a no-evidence motion for summary judgment. On October 21, 1999, appellant filed her first supplemental petition.[2] On November 17, 1999, the court issued a final summary judgment.

---

1. Blacklisting was also identified as a cause of action, but it is not being challenged on appeal.

2. Appellant contends that because appellees did not amend their motion for summary judgment, the summary judgment order cannot be final. However, appellant's supplemental petition did not raise any new causes of action, and, therefore, appellees' motion for summary judgment encompasses the supplemental petition. *See Smith v. Atl. Richfield Co.*, 927 S.W.2d 85, 88–89 (Tex.App.-Houston

We begin by addressing appellant's second point of error wherein she argues that the trial court erred in overruling her objections to appellees' evidence. We review a trial court's decision to admit or exclude summary judgment evidence under an abuse of discretion standard. *See Barraza v. Eureka Co.*, 25 S.W.3d 225, 228 (Tex.App.-El Paso 2000, pet. denied).

Appellant objected to the affidavits of the custodians of records for the two news stations arguing that the affidavits failed to lay the proper predicate for admitting the videotape of newscasts into evidence. Appellant relies on this Court's holding in *Boarder to Boarder Trucking, Inc. v. Mondi, Inc.*, 831 S.W.2d 495, 497 (Tex.App.-Corpus Christi 1992, no pet.), which incorporated a seven prong test into Texas Rule of Evidence 901 for authentication and identification. *Id.* However, the Texas Court of Criminal Appeals subsequently held that the seven prong test is not needed because rule 901 is "straight forward, containing clear language and understandable illustrations."[3] *See Angleton v. State*, 971 S.W.2d 65, 69 (Tex.Crim.App. 1998); *Ballard v. State*, 23 S.W.3d 178, 182 (Tex.App.-Waco 2000, no pet.). Rule 901(a) states, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). We conclude each affidavit is sufficient to support a finding that the videotape offered at trial is a copy of the two newscasts at issue in this case.

Furthermore, not only is the videotape sufficiently authenticated under rule 901(a), but it is also self-authenticated under rule 902(10).[4] Texas Rule of Evidence 902 states that extrinsic evidence of authenticity as a condition precedent to admissibility is not required for business records accompanied by an affidavit. *See* TEX. R. EVID. 902(10). The two affidavits follow the form affidavit found in rule 902(10) stating that the videotape is a business record kept in the regular course of business. *See id.* Accordingly, the trial court did not abuse its discretion by admitting the videotape as evidence.

Appellant next contends that the trial court erred in overruling her objections to the affidavit of Tracy Harting (Harting), the Shelter's board president. Appellant objected that Harting's affidavit was not based on personal knowledge, did not establish the competency of the witness, and contained hearsay and unsubstantiated legal and factual conclusions.

To constitute competent summary judgment evidence, affidavits must be made on personal knowledge, set forth facts as would be admissible in evidence and show affirmatively that the affiant is competent to testify to matters stated therein. TEX. R. CIV. P. 166a(f); *H.S.M. Acquisitions, Inc. v. West*, 917 S.W.2d 872, 881 (Tex.App.-Corpus Christi 1996, writ denied); *Hall v. Rutherford*, 911 S.W.2d 422, 424 (Tex.App.-San Antonio 1995, writ denied).

Harting's affidavit affirmatively sets out that she has personal knowledge

---

[1st Dist.] 1996, writ denied); *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 672–73 (Tex.App.-Houston [1st Dist.] 1996, no writ).

**3.** Texas Rules of Evidence govern both civil and criminal proceedings. *See* TEX. R. EVID. 101(b).

**4.** "A document may be authenticated under either rules 901 or 902, and it need not be authenticated under both." *Reed v. State*, 811 S.W.2d 582, 586 (Tex.Crim.App.1991); *Spaulding v. State*, 896 S.W.2d 587, 590 (Tex. App.-Houston [1st Dist.] 1995, no pet.).

of facts regarding the Shelter's financial problems. *See Ryland Group v. Hood,* 924 S.W.2d 120, 122 (Tex.1996); *Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex.1994). Additionally, Harting's assertions regarding her personal knowledge and experience as the Shelter's board president show her competence to testify about the Shelter's financial problems. *See Esquivel v. Mapelli Meat Packing Co.,* 932 S.W.2d 612, 618 (Tex.App.-San Antonio 1996, writ denied). Finally, the affidavit sets forth admissible facts. *H.S.M. Acquisitions, Inc.,* 917 S.W.2d at 881. It does include one sentence which contains hearsay. That sentence states "Ms. Cynthia Alaniz had informed a board member that if the Board really wanted to know the financial problems of the Shelter, the Board should ask for certain tax records as well as other financial records." One sentence, however, does not negate the whole affidavit. *See Muhm v. Davis,* 580 S.W.2d 98, 102 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd) ("fact that affidavits may contain such [hearsay] statements does not require conclusion that [other] factual statements which would be admissible and which are found in the affidavits cannot be considered"). Harting's affidavit is therefore competent summary judgment evidence.

Appellant next objects to the deposition of news reporter Ronald George (George) because it conflicts with appellee Harting's affidavit. We find, however, that there is no conflict between the two documents. Appellant points this Court to George's deposition testimony which states he was under the impression that appellant made the Shelter's Board aware of the tax liability issue. However, Harting's affidavit states that she told George that "an em-ployee" informed the Shelter's Board of the tax liability. Harting never stated that it was appellant who informed the Board, nor did she say that it was Alaniz. George's impression that it was appellant, not any other employee, is not adequate proof of a factual conflict between the two pieces of evidence.

■ Appellant further objects to George's deposition on the basis of hearsay and because the attachments are not authenticated, verified, sworn to, and are submitted without predicate for admission. Appellant fails to identify where in the record the attachments are located,[5] fails to identify which parts, or sentences, contain hearsay in the deposition, and fails to provide us with any authority to support her contention. As a result of inadequate briefing, appellant's objections are waived. *See* TEX. R. APP. P. 38.1(h); *Sisters of Charity of the Incarnate Word v. Gobert,* 992 S.W.2d 25, 31 (Tex.App.-Houston [1st Dist.] 1997, no pet.); *Warehouse Partners v. Gardner,* 910 S.W.2d 19, 26 (Tex.App.-Dallas 1995, writ denied).

Appellant also objects to the affidavit of Margaret Neu (Neu), a Corpus Christi Caller–Times publisher, in that it failed to lay a proper predicate for newspaper articles attached to appellees' motion for summary judgment. As mentioned earlier, this Court follows the clear language of rule 901 of the Texas Rules of Evidence. *See Angleton,* 971 S.W.2d at 69. Rule 901(a) states, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). The affidavit of Neu is more than sufficient to lay a proper predicate to sup-

---

**5.** Appellant refers the Court to "Exhibit C," but no attachments appear in the cited exhib- it.

port her statement that the newspaper columns are true copies and that they were published on said dates.

■ Appellant finally objects to an affidavit and letter written by appellee Ann Hennis (Hennis). Appellant complains it does not meet the standards found in *Casso v. Brand,* 776 S.W.2d 551 (Tex.1989). Rule 166a(c) of the Texas Rules of Civil Procedure states, in relevant part, that "a summary judgment may be based on uncontroverted testimonial evidence of an interested witness, ... if the evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c). Interpreting the last section of rule 166a(c), the Texas Supreme Court, in *Casso,* concluded that the language, "could have been readily controverted," means that testimony at issue is of a nature which can be effectively countered by opposing evidence. *Casso,* 776 S.W.2d at 558. Hennis's letter was written to appellant's attorney requesting the return of property in appellant's possession. The affidavit simply attests that the letter in appellees' motion for summary judgment was a true and correct copy of the letter written to appellant's attorney. Its inclusion in the motion for summary judgment was not to prove that appellant had the property, but was included to assist the court in determining if there was any actionable language for the defamation or the intentional infliction of emotional distress causes of action. The hearsay objection does not have any merit because none of the statements are being used by appellees to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d). We hold that the court properly overruled appellant's objection because the letter and supporting affidavit are competent summary judgment evi-

dence as set forth in rule 166a(c). Appellant's second point of error is overruled.

■ In appellant's third point of error, she contends that the court erred by sustaining appellees' objection to her affidavit. Specifically, appellant complains that the trial court erred in ruling that there were conflicts and inconsistencies between appellant's deposition testimony and her affidavit. Appellees rely on *Farroux v. Denny's Rests., Inc.,* 962 S.W.2d 108, 111 (Tex.App.-Houston [1st Dist.] 1997, no pet.), to support their contention that appellant has created a "sham fact" issue by the alleged inconsistencies in her deposition and her affidavit in an effort to delay or thwart the summary judgment ruling. However, we conclude any inconsistency or conflict between a party's deposition and affidavit is not a reason to exclude that evidence in a summary judgment proceeding. *See Thompson v. City of Corsicana Hous. Auth.,* 57 S.W.3d 547, 556–557, 2001 Tex.App. LEXIS 6063, *20–*25 (Tex.App.-Waco Aug.29, 2001, no pet.); *Grizzle v. Texas Commerce Bank, N.A.,* 38 S.W.3d 265, 283 (Tex.App.-Dallas 2001, pet. filed). Rather, these inconsistencies and conflicts create a fact issue that should be resolved by a jury. *See Thompson,* at 557, 2001 Tex.App. LEXIS 6063 at *24; *Sosebee v. Hillcrest Baptist Med. Ctr.,* 8 S.W.3d 427, 435 (Tex.App.-Waco 2000, pet. denied). Therefore, if the trial court excluded appellant's affidavit based on any inconsistency or conflicts between the affidavit and appellant's deposition, the court abused its discretion. However, there is no evidence in the record that the trial court sustained appellees' objection on this basis. Appellees made numerous objections to appellant's affidavit, including: (1) that appellant was an interested witness; (2) statute of frauds violation; (3) legal and factual conclusions; (4) no personal knowledge; and (5) hearsay. Appellant only chal-

lenges the objection based on the inconsistencies. The trial court could have sustained other objections made to appellant's affidavit.[6] Accordingly, the trial court did not abuse its discretion in sustaining appellees' objection(s). Appellant's third point of error is overruled.

By her first point of error, appellant generally contends the district court erred in granting appellees' motion for summary judgment because appellees failed to prove as a matter of law they were entitled to summary judgment. In a motion for summary judgment, the moving party must establish that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985). In order to prevail on such motion, the moving party must either disprove at least one element of each cause of action, or plead and conclusively establish each essential element of an affirmative defense. *See Randall's,* 891 S.W.2d at 644; *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990). If the moving party has established his or her right to summary judgment, the burden shifts to the non-moving party to present evidence that would raise a genuine issue of material fact. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

▮▮▮▮ A party may move for a no-evidence summary judgment after there

has been adequate time for discovery. TEX. R. CIV. P. 166a(i). In a no-evidence motion for summary judgment, the moving party must state the elements as to which there is no evidence. *Id.* The court must grant the motion unless the non-moving party produces evidence raising a genuine issue of material fact. *Id.; Saenz v. S. Union Gas Co.,* 999 S.W.2d 490, 493 (Tex. App.-El Paso 1999, pet. denied). The evidence presented by the non-moving party only has to be more than a scintilla to show a genuine issue of material fact. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

In any motion for summary judgment, we must accept as true evidence in favor of the non-moving party, indulging every reasonable inference and resolving all doubts in her favor. *See Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997); *Randall's,* 891 S.W.2d at 644.

▮▮▮▮ Appellant contends that the court erred in granting summary judgment because a genuine issue of material fact existed as to whether appellees communicated defamatory statements. Slander is an oral defamatory statement that is communicated to a third party without justification or legal excuse. *See Cain v. Hearst Corp.,* 878 S.W.2d 577, 580 (Tex. 1994) (citing *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 921 (Tex. App.-Corpus Christi 1991, writ dism'd w.o.j.)). A statement is defamatory if the

**6.** For example, appellant's affidavit contained conclusory statements. An affidavit supporting or opposing motion for summary judgment must set forth facts, not legal conclusions. *See Hall v. Rutherford,* 911 S.W.2d 422, 424 (Tex.App.-San Antonio 1995, writ denied); *Beta Supply Inc. v. G.E.A. Power Cooling Sys., Inc.,* 748 S.W.2d 541, 542 (Tex. App.-Houston [1st Dist.] 1988, writ denied). In her affidavit appellant states that "[appel-

lees] made numerous slanderous statements to the media in which they suggested a direct connection between the entire deficient financial condition of the Shelter and my termination." Appellant also concludes in her affidavit that "[w]hen an employee engages in activities designed to hide her actions, I, as Executive Director, am no more responsible for the same than is the Board of Directors."

words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury. *Einhorn v. LaChance*, 823 S.W.2d 405, 410–11 (Tex.App.-Houston [1st Dist.] 1992, writ dism'd w.o.j.). Whether words are capable of a defamatory meaning the plaintiff attributes to them is a question of law for the trial court. *Diaz v. Rankin and KURV, Inc.*, 777 S.W.2d 496, 498 (Tex. App.-Corpus Christi 1989, no writ). Allegedly slanderous statements should be construed as a whole and based on how a person of ordinary intelligence would perceive the entire statement. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex.2000). Truth is a defense to defamatory statements. *See Randall's*, 891 S.W.2d at 646; *Cain*, 878 S.W.2d at 580. A showing of substantial truth at a summary judgment hearing will defeat a defamation claim. *Garcia v. Allen*, 28 S.W.3d 587, 594 (Tex.App.-Corpus Christi 2000, pet. denied). We hold that appellees met their burden.

■■■ There is no evidence that appellee, Harting, stated anything other than the truth to the news media. As set out in Harting's affidavit, the only direct mention of appellant was that she was placed on administrative leave after the board of directors discovered the tax liability.[7] This fact is uncontroverted. Appellees also stated that after appellant was placed on leave, an internal audit was ordered and appellant was subsequently terminated. These statements have also been admitted by appellant.

■■■ Appellant further contends that the above statements led the media to report inferences that appellant was the sole reason for the Shelter's financial shortfalls. However, appellees cannot be liable for presenting a true account of events, regardless of what someone may infer from the account. *See KTRK Television, Inc.*, 38 S.W.3d at 115; *Randall's*, 891 S.W.2d at 646. Therefore, we hold that the court did not err in granting the summary judgment motion for this cause of action.[8]

■■■ Appellant next contends that there is evidence of intentional infliction of emotional distress and that the trial court erred in holding otherwise. To recover damages for intentional infliction of emotional distress, a plaintiff must establish that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the de-

---

7. Appellant also generally complains that Harting's affidavit is not clear, positive, direct, credible, free from contradiction, and susceptible to being readily controverted because she is an interested witness. *See* TEX. R. CIV. P. 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex.1997). However, we conclude that she is a competent witness because her affidavit is based on personal knowledge, and it can be effectively countered by opposing evidence. *See Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989). Her affidavit, therefore, meets the criteria of rule 166a(c).

8. When the trial court grants a summary judgment without specifying the reasons, as in this case, we will affirm if any of the theories asserted by the defendant in its mo-

tion for summary judgment have merit. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). Appellees raised the affirmative defense of qualified privilege in their motion for summary judgment. However, appellees' reliance on *Schauer v. Mem'l. Care Sys.*, 856 S.W.2d 437 (Tex.App.-Houston [1st Dist.] 1993, no writ.), is misplaced. *See id.* at 459–60 (court held qualified privilege existed because employee's performance report was reviewed by supervisors and "was [not] published to anyone outside the hospital or anyone without a legitimate interest in its contents"). Appellees provided no other authority to support this theory under the facts of this case, and we find none. Therefore, we cannot affirm their summary judgment on this basis.

fendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex.2000) (citing *Randall's*, 891 S.W.2d at 644). Extreme and outrageous conduct is conduct that goes beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community. *Id.; Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). A claim for intentional infliction of emotional distress will not lie if emotional distress is not intended or the primary consequence of the defendant's conduct. *GTE Southwest, Inc. v. Bruce, et al.*, 998 S.W.2d 605, 611 (Tex.1999). Texas courts have adopted a strict approach to intentional infliction of emotional distress claims arising in the workplace. *See, e.g., Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex.2001); *GTE*, 998 S.W.2d at 612. "The range of behavior encompassed in 'employment disputes' is broad, and includes at a minimum such things as criticism, lack of recognition, and low evaluations, which, although unpleasant and sometimes unfair, are ordinarily expected in the work environment." *GTE*, 998 S.W.2d at 613.

Appellees argue appellant presented no evidence as to each element of intentional infliction of emotional distress. Appellant only needs to present more than a scintilla of evidence to show a genuine issue of material fact. *Flameout Design & Fabrication, Inc.*, 994 S.W.2d at 834. Whether plaintiff presented sufficient evidence of extreme and outrageous conduct is a matter of law for the court to decide. *See Saucedo v. Rheem Mfg. Co.*, 974 S.W.2d 117, 123 (Tex.App.-San Antonio 1998, pet. denied). Looking at the record and appellant's evidence, we conclude appellant has failed to provide more than a scintilla of evidence that appellees' actions were extreme and outrageous.

Appellant's contentions that appellees' conduct was extreme and outrageous in writing her a letter for the return of property is untenable. Likewise, appellees' statement to the media that appellant was put on leave is not extreme and outrageous behavior. The board of directors and officers for the Shelter must be given latitude to exercise their rights in a permissible way to properly manage their corporation. *Cf. Bradford*, 48 S.W.3d at 759 (holding that "business managers must have latitude to exercise their rights in a permissible way in order to properly manage their business, even though it may not always be pleasant for those involved."); *GTE*, 998 S.W.2d at 612 (holding that an employer should be able to exercise its rights in a permissible way even though emotional distress results). Harting's affidavit explained that the purpose of speaking to the media was to assure the public that the Shelter was still functioning and to seek support from the public; she was exercising her rights as the board president and was not intending to cause any emotional distress. *See GTE*, 998 S.W.2d at 611. Although appellee may have suffered severe distress because of the news reports, she cannot prove that appellees acted in such a way as to go beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community. *Morgan*, 27 S.W.3d at 929. "The mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous." *Southwestern Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998). The trial court did not err in granting the summary judgment motion on appellant's intentional infliction of emotional distress cause of action.

Appellant next contends there is a genuine issue of material fact as to her claim of tortious interference with a prospective contract.[9] Appellant complains she was unable to gain employment as a result of the media reports regarding the Shelter and because alleged facsimiles with disparaging comments about her were received by prospective employers.

■■■ The elements for a tortious interference with prospective contract cause of action are:

(1) A reasonable probability that the parties would have entered into a contractual relationship;

(2) An intentional and malicious act by the defendant that prevented the relationship from occurring;

(3) With the purpose of harming the plaintiff;

(4) The defendant lacked privilege or justification to do the act; and,

(5) Actual harm or damage resulted from the defendant's interference.

*Garner v. Corpus Christi Nat'l. Bank,* 944 S.W.2d 469, 477 (Tex.App.-Corpus Christi 1997, writ denied); *Exxon Corp. v. Allsup,* 808 S.W.2d 648, 659 (Tex.App.-Corpus Christi 1991, writ denied). To maintain this cause of action, appellant must have direct evidence of appellees' intent to interfere. *See Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 927 (Tex.1993). The intent element is established if there is direct evidence that appellees "desire to [interfere] or if [they know] that the interference is certain or substantially certain to occur as a result." *See Bradford,* 48 S.W.3d at 757. If appellees had no desire to interfere with appellant's action but knew that it would be a mere incidental result of conduct for another purpose, this interference may not be improper. *Id.*

■■■ We find no evidence in the record to establish that appellees spoke with the media with the intent to harm appellant's chances of getting a job. Nor is there any evidence that appellees sent a fax to any prospective employer. Appellant urges this Court to look at her affidavit where she states that she was not hired by the National Kidney Foundation because of the media reports. However, appellees' hearsay objection to this statement was sustained. Appellant fails to address this ruling in this appeal, therefore, we will not consider that statement as evidence. *See* TEX. R. APP. P. 38.1(h). Because appellant failed to provide evidence of intentional interference, the trial court correctly granted appellees' summary judgment on appellant's cause of action for tortious interference with prospective contract.

■■■ Appellant's next contention is that the court erred in granting appellees' motion for summary judgment on her breach of contract claim because a genuine issue of material fact exists as to whether appellees and appellant had an oral contract of employment. Appellees contend that appellant failed to prove that appellant was anything more than an employee at-will. The general rule in Texas is that absent a specific agreement to the contrary, employment may be terminated by the employer or employee at-will for good, bad, or no cause at all. *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998). For such an agreement to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. *Id.* If

---

**9.** After a careful review of the record, we conclude that although appellant titles pleading and briefing sections "tortious interference with contractual relationship," she concedes she is bringing only a cause of action for "tortious interference with prospective contract."

an employee does not have a formal agreement with his employer, the employee cannot construct one out of indefinite comments, encouragements, or assurances. *Id.* A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee at-will has the burden of proving an express agreement or written representation to that effect. *Rios v. Texas Commerce Bancshares, Inc.,* 930 S.W.2d 809, 814–15 (Tex.App.-Corpus Christi 1996, writ denied).

■■■■■■ To avoid the employment at-will doctrine, an employee has the burden of proving that she and the employer had a contract that directly limited in a "meaningful and special way" the employer's right to terminate the employee without cause. *Massey v. Houston Baptist Univ.,* 902 S.W.2d 81, 82 (Tex.App.-Houston [1st Dist.] 1995, writ denied). A hiring based on an agreement of an annual salary limits in a meaningful and special way the employer's prerogative to discharge the employee during the dictated period of employment. *See Demunbrun v. Gray,* 986 S.W.2d 627, 628 (Tex.App.-El Paso 1998, no pet.); *Rios,* 930 S.W.2d at 815; *Wino-*

*grad v. Willis,* 789 S.W.2d 307, 310 (Tex. App.-Houston [14th Dist.] 1990, writ denied). Absent special circumstances, Texas follows the general rule that a "hiring at a stated sum per week, month, or year, is definite employment for the period named and may not be arbitrarily concluded." *Smith v. SCI Mgmt. Corp.,* 29 S.W.3d 264, 267 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (citing *Winograd,* 789 S.W.2d at 310). However, this rule alters an employee's at-will status only when evidence shows that the parties intended to directly limit in a meaningful and special way the employee's at-will status. *SCI Mgmt. Corp.,* 29 S.W.3d at 267. Cases holding that an annual salary limits in a "meaningful and special way" an employee's right to discharge an employee during the dictated period of employment involved parties who negotiated and agreed on the terms and conditions of employment and had written evidence reflecting their agreement.[10] *Id.* Here, there is no such evidence.

■■■■■ Although appellant stated in her deposition that she was hired with an annual salary of $25,000.00,[11] and that her position would be evaluated on perfor-

---

**10.** *See Ronnie Loper Chevrolet–Geo, Inc. v. Hagey,* 999 S.W.2d 81, 84 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (parties negotiated and agreed upon the terms of employment as evidenced by a written proposal); *Saucedo v. Rheem Mfg. Co.,* 974 S.W.2d 117, 124 (Tex. App.-San Antonio 1998, pet. denied) (parties executed a written employment agreement providing for an annual salary); *Demunbrun v. Gray,* 986 S.W.2d 627, 628 (Tex.App.-El Paso 1998, no pet.) (parties signed an employment contract stating base annual salary); *see also Massey v. Houston Baptist Univ.,* 902 S.W.2d 81, 83–84 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Lee–Wright, Inc. v. Hall,* 840 S.W.2d 572, 578 (Tex.App.-Houston [1st Dist.] 1992, no writ); *Winograd v. Willis,* 789 S.W.2d 307, 310 (Tex.App.-Houston [14th Dist.] 1990, writ denied) (parties executed contract that contained negotiated terms and

conditions, position and salary, and included space for employee to sign if he accepted such terms and conditions); *cf. Rios v. Tex. Commerce Bancshares, Inc.,* 930 S.W.2d 809, 815 (Tex.App.-Corpus Christi 1996, writ denied) (letter stating annual salary did not embody terms of any agreement between the parties because it did not specify a beginning date, duration of time, and did not require acceptance signatures).

**11.** Appellant relies on her deposition and her affidavit to support her argument. However, because appellees' objected to the entire affidavit, the objections were sustained by the trial court, and appellant does not bring all objections to the affidavit on appeal, this Court will not consider appellant's affidavit as summary judgment evidence.

mance and for any salary increase, we agree with the court in *SCI Mgmt. Corp.*,[12] that this alone is not enough to raise a fact issue as to whether the parties agreed to limit in a "meaningful and special way" the appellees' prerogative to discharge appellant without cause. *See id.* at 268 (general discussion about employee's annual compensation did not raise a fact issue as to whether the parties agreed to limit in a "meaningful and special way" the employer's prerogative to discharge the employee without cause). Appellant testified that at the time she was hired, there was no mention of the duration of her employment. *See id.* There is no evidence to show that the parties discussed any other conditions of appellant's employment, nor any circumstances under which appellant's employment could be terminated. *See id.* Furthermore, there is no evidence of a written document outlining the salary, terms, and conditions of appellant's employment at the time she was hired. Appellant's testimony that she was to receive an annual salary does not "unequivocally indicate a definite intent to be bound not to terminate [appellant] except under clearly specified circumstances," nor is it sufficient to show an express agreement to alter her at-will status. *Brown*, 965 S.W.2d at 502; *Saucedo*, 974 S.W.2d at 128. Based on this evidence, appellant has failed to raise a genuine issue of material fact as to her breach of contract claim and the trial court did not err in its summary judgment for this cause of action. Appellant's first point of error is overruled.

Accordingly, we affirm the trial court's summary judgment.

---

12. In *Smith v. SCI Mgmt. Corp.*, 29 S.W.3d 264 (Tex.App.-Houston [14th Dist.] 2000, no pet.), the court held that an annual salary did not raise a fact issue as to whether the parties agreed to limit in a meaningful and special way the employer's prerogative to discharge the employee without cause because there was "no evidence ... that the parties negoti-ated and agreed upon this salary ....[and they] did not negotiate, accept, or agree on the terms of other conditions of employment ... nor discuss any circumstances under which either party could terminate [employment].... [and] the parties did not agree on a duration of employment...." *Id.* at 268.