**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-10151
_____

MITZI GREEN, Individually; JESSICA GREEN, By and Through
Her Guardian and Next Friend Mitzi Green,

Plaintiffs-Appellants,

versus

CBS INC; ET AL

Defendants

48 HOURS; DAN RATHER; CHUCK STEVENSON; BILL
LAGATTUTA; SUSAN ZIRINSKY; CBS BROADCASTING INC

Defendants- Appellees.

Appeal from the United States District Court
For the Northern District of Texas

April 3, 2002

Before JONES, EMILIO M. GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiffs-Appellants Mitzi Green and Jessica Green (collectively, the "Greens") appeal the

district court's grant of summary judgment in favor of Defendants-Appellees CBS Broadcasting Inc.,

*48 Hours*, Dan Rather, Chuck Stevenson, Bill Lagattuta, and Susan Zirinsky (collectively, "CBS").

On appeal, we must decide whether the district court correctly determined that no genuine issue of

material fact existed as to the Greens' defamation or invasion of privacy claims.

CBS published and aired a story entitled "Lotto Town" in January 1998 on its weekly news magazine, *48 Hours*, detailing the lives of forty-two lotto millionaires living in the small town of Roby, Texas. One of these lotto winners was Lance Green, Mitzi Green's ex-husband. In the course of its one-hour broadcast, CBS showed how Lance's life changed during the year following his lotto win. The story included, among other events, Lance's divorce from Mitzi Green, his relationship with her daughter Jessica, and Mitzi Green's charge that Lance had sexually abused Jessica. During the broadcast, Lance, the CBS correspondent Lagattuta, and other Roby residents made several statements referencing Mitzi. These include Lagattuta's statement that Mitzi "wanted more money" from Lance after he won the lotto, and allegations by Lance that she used her daughter to get more money from him. At one point during the hour-long show, Lance and his lawyer expressed their opinion that Mitzi fabricated the sexual assault charges against Lance, and a Roby resident expressed his belief that Lance was innocent. The broadcast also showed Lance pointing out several pictures of Jessica taped to his refrigerator, while referring to her as his "daughter."

As a result of the "Lotto Town" broadcast, the Greens filed suit against CBS, alleging claims for defamation and invasion of privacy. Specifically, Mitzi Green contends that the story falsely implied that she is a liar and a "gold digger," and that the identification of Jessica Green in the story as a victim of sexual abuse, along with the publication of her name and likeness, constitutes an unlawful invasion of Jessica Green's privacy. The district court concluded that the defamation claim failed because the Greens presented insufficient evidence showing that the statements aired were false and defamatory. The court also rejected the invasion of privacy claim because the broadcast did not publicize any private facts. We agree with the district court's conclusions.

We review a district court's grant of summary judgment de novo. *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 167 (5th Cir. 2000). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). On a motion for summary judgment, a court must review the facts in the light most favorable to the non-movant. *Peavy*, 221 F.3d at 167.

**I**

The Greens have failed to show that there is a genuine issue of material fact as to whether Mitzi Green was defamed by CBS's broadcast. To prevail on a libel claim, a private citizen plaintiff must establish (1) the defendant published a false statement; (2) the false statement was defamatory, in that it damaged the plaintiff's reputation, exposing her to "public hatred, contempt, ridicule, or financial injury"; and (3) the defendant made the statement with negligence as to its truth. *Dolcefino v. Randolph*, 19 S.W.3d 906, 917 (Tex. App.- Houston 2000, pet. denied). A defendant can defeat a libel claim by establishing the "substantial truth" of the statement. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex. 1990). "A broadcast is substantially true if the allegedly defamatory statement is not more damaging to the plaintiff's reputation, in the mind of the average person, than the truthful statement." *Randolph*, 19 S.W.3d at 918. We look at the "gist" of a broadcast to determine whether it is substantially true. *McIlvain,* 794 S.W.2d at 16. We agree with the district court's conclusion that the facts reported in the broadcast, taken as a whole, were substantially true.

First, the statements identified by the Greens as false)) that Mitzi took back the daughter he had raised since birth after the Greens separated, and that Mitzi wanted a share of the lotto

winnings))are, in fact, true.[1]  The parties do not dispute that Mitzi requested a portion of the lotto proceeds after an initial settlement was reached but before the divorce became final, and that she ultimately settled for less than the half-share she was entitled to under Texas Community Property law.  In addition, while the Greens object to the fact that Lance continually refers to Jessica as his "daughter," the CBS correspondent clearly states that Jessica is Lance's stepdaughter.

Other statements taken from the broadcast and identified by the Greens as defamatory are non-actionable because they merely report allegations.  For example, the Greens point to portions of the broadcast where Lance says that Mitzi is keeping Jessica from him until he pays her more money, and where Lance and his attorney assert that Mitzi fabricated the charges in an effort to get more money out of Lance.[2]  In cases involving media defendants, such as this, the defendant need not show the allegations are true, but must only demonstrate that the allegations were made and accurately reported.  *Randolph*, 19 S.W.3d at 918 (stating media defendants need not establish the substantial truth of reported allegations); *KTRK Television v. Felder*, 950 S.W.2d 100, 106 (Tex. App.-Houston

---

[1] The statement in dispute was made by Lagattuta, in which he says, "Lance and his wife separated months before the lottery win. . .[a]nd his wife took back the stepdaughter Lance had helped raise since birth. . .[n]ow Lance's sudden good fortune is opening old wounds.  His ex-wife wants money and Lance says she's keeping him from little Jesse until she gets it, charges the ex-wife denies."  In addition, during another portion of the broadcast, another Roby resident commented that "[a] little before Lance won these millions, [Mitzi] was divorcing him, and she didn't make any bones, from what I hear, that))that she was gonna divorce him and try to get the alimony out of him.. . .The day or two before the divorce was final, she came back and tore up the papers and said she wanted half the))the lotto, and he refused her."

[2] The Greens object in particular to the following exchange between Lagattuta and Lance's criminal attorney that occurs after the subject of the abuse charges is introduced:
Lagattuta: "You believe that a large reason why he's in this mess today is because he's got some money."
Roberts: "I think that's the total reason.  There's a lot of people out to separate a man from his money."

1997, no writ) (holding defendant need only prove that allegations were in fact made to establish substantial truth). After reviewing the transcript, we conclude that the reported statements reveal only the opinion of the speaker, and are not defamatory.

Finally, the Greens assert that in light of the Texas Supreme Court's holding in *Turner v. KTRK Television, Inc.*, even if the broadcast included individual statements that are true, it is still as a whole defamatory. 38 S.W.3d 103 (Tex. 2000). In *Turner*, the court held that "a plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Id.* at 115. The *Turner* broadcast questioned a mayoral candidate's involvement in his former client's multi-million-dollar insurance scam. *Id.* at 111. While Turner's role was limited to drafting and probating the client's will, the report gave the false impression that he was involved in the conspiracy to fake the client's death. *Id.* at 117-19. Based on these facts, the Texas Supreme Court concluded that the broadcast as a whole was substantially false and defamatory, because it "cast more suspicion on Turner's action than an accurate account would have warranted." *Id.* at 119.

In this case, the Greens argue that the "Lotto Town" story as a whole was misleading because CBS failed to include relevant information about Mitzi Green. For example, CBS never reported that Mitzi settled for substantially less than her community property share of the winnings, that Lance had given up visitation rights and requested a legal designation stating that he was not Jessica's biological father as part of the initial divorce settlement, that a medical exam proved that Jessica had in fact been raped, and that Lance had failed one of two polygraph examinations. We are not persuaded by the Greens' argument. Although the inclusion of more facts may have resulted in a more balanced

broadcast, the broadcast as a whole did not misrepresent the story. The "gist" of the "Lotto Town" story with regard to Lance Green was that his wife requested additional money as part of their divorce settlement after he won the lotto, and that she accused him of sexually abusing her daughter Jessica, charges which he denied. Given that CBS accurately reported facts, albeit not all of the facts, whether or not the story painted Mitzi Green in an attractive light is irrelevant. *See Larson v. Family Violence & Sexual Assault Prevention Ctr. of S. Tex.*, No. 13-00-093-CV, 2001 WL 1558358, at *6 (Tex. App.-Corpus Christi Nov. 29, 2001, no pet. h.) (holding defendant "cannot be liable for presenting a true account of events, regardless of what someone may infer from the account"). Because the broadcast did not create a false impression of Mitzi Green's actions, it is not defamatory.

The Greens have failed to show that any genuine issue of material fact exists as to the truth of the alleged defamatory statements, therefore the district court correctly granted summary judgment against them.

## II

The Greens' claim of invasion of privacy also fails. Although the parties agree that the publication of Jessica's name and picture are not themselves private facts, the Greens allege that by tying Jessica's name and image to the sexual assault, CBS disclosed embarrassing private facts about her. *Johnson v. Sawyer*, 47 F.3d 716, 734 (5th Cir. 1995) (en banc) (stating that publication of non-private information such as names or other identifying facts is an invasion of privacy only where it publicly ties individual to some private occurrence that is intimate and embarrassing); *Ross v. Midwest Comms., Inc.*, 870 F.2d 271, 274 (5th Cir. 1989) (holding that rape victim's name and identity are private facts only when viewed in connection with details of rape). To establish an invasion of privacy claim in Texas, a plaintiff must establish: (1) publicity was given to private matters; (2)

publication of such matters would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matters are not of legitimate public concern. *Indus. Found. of the S. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex. 1976). The publication of facts which are matters of public record, no matter how objectionable, does not constitute invasion of privacy. *Johnson,* 47 F.3d at 731 (stating that this "tort does not extend to facts, no matter how intimate, embarrassing, or otherwise private, which [are] a matter of open public record"). The record reveals that the details of sexual assault charge, including the victim (Jessica) and the alleged perpetrator (Lance) were well known throughout Roby. Not only did Lance talk about the charges with "hundreds" of people, Mitzi also disclosed the information to several people. Moreover, the sexual abuse allegation was discussed in open court during Lance and Mitzi's divorce proceedings.[3] Texas law is clear that "once information is part of a public record, there can be no liability for publicizing it." *Id.* at 732 (quoting *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex. App.-Forth Worth 1982, no writ)). Thus, because these facts were not private, they are not actionable.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of CBS, as there are no genuine issues of material fact related to the Greens' defamation or invasion of privacy claims sufficient to withstand summary judgment.

---

[3] We note that while the indictment for sexual assault against Lance used a pseudonym instead of Jessica Green's name, other court documents filed as part of the divorce proceeding, including Mitzi Green's application for a restraining order, specifically identified Jessica as the victim of "family violence."