

**NUMBER 13-08-628-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

FREEDOM COMMUNICATIONS, INC. D/B/A          **Appellant,**
THE BROWNSVILLE HERALD AND THE VALLEY
MORNING STAR,

**v.**

JUAN ANTONIO CORONADO, ET AL,          **Appellees.**

---

**On appeal from the 357th District Court
of Cameron County, Texas.**

---

## DISSENTING OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Dissenting Opinion by Justice Vela**

I dissent from the majority's opinion because I believe that Freedom established its

right to summary judgment as a matter of law. First, I would hold that Freedom

conclusively established that the statements made in the advertisements concerning the

appellees were substantially true. Second, I believe that Freedom established as a matter of law that appellees may not recover on their invasion of privacy cause of action.

This libel action arose from the publication of political advertisements created by an advertising agency for a candidate hoping to unseat the incumbent district attorney of Cameron County, Texas. The advertisements and their later variations were published by Freedom Communications, Inc. ("Freedom") in two of its newspapers with circulation in the Rio Grande Valley. The scenario is somewhat unique because the defamation action was brought, not by the district attorney who was the focus of the political advertisements, but by four individual defendants named in some of the advertisements, who had each been accused of either physical or sexual abuse against children. The appellees were among more than one hundred individuals mentioned in the advertisements who had all been accused of crimes involving children.

In analyzing political advertisements, it is well settled that the core values of the First Amendment reflect a recognition of the "importance of the free flow of ideas and opinions or matters of public interest and concern." *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989) (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988)). The right to freedom of the press is in the First Amendment because this liberty is essential to the nature of a free society. Forbidding this liberty would place a chilling effect on political speech and would destroy the foundation of our free society.

Our state constitution expressly authorizes the bringing of reputational torts. *See* Tex. Const. art. I, §§ 8, 13.[1]  With respect to the granting of summary judgment in cases involving reputational torts, the supreme court noted in *Casso v. Brand*, "'that summary judgment practice is particularly well-suited for the determination of libel actions, the fear of which can inhibit comment on matters of public concern.'"  776 S.W.2d 551, 558 (Tex. 1989) (quoting *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 104 N.J. 125, 157 (1986)).  The United States Supreme Court, in recognition of the special public interest in elected officials, stated that "the constitutional guarantee [of a free press] has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).

Preservation of free expression is urgent in the political arena because an important purpose of the First Amendment is to ensure vigorous discussion of governmental issues. *See Buckley v. Valeo*, 424 U.S. 1, 14 (1976).  It follows then that these protections should apply particularly in the arena of a paid political advertisement.  In *New York Times v. Sullivan,* which concerned libel asserted by a public figure, one of the questions addressed was whether a constitutionally protected advertisement forfeited some of the First Amendment protection by the falsity of some of the factual statements in the advertisement and its alleged defamation of the police commissioner.  376 U.S. 254, 271 (1964).  The United States Supreme Court determined that the advertisement was protected.  Notably, in *Sullivan*, the advertisement was checked by no one at the newspaper before it was

[1]Article 1, section 8 of the Texas Constitution provides that "[e]very person shall be at liberty to speak, write, or publish his opinions on any subject, *being responsible for the abuse of that privilege*. . . ." Tex. Const. art. 1, § 8 (emphasis added).  Section 13 provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person, or *reputation* shall have remedy by due course of law." Tex. Const. art. 1, § 13 (emphasis added).

published; the advertising manager relied upon the reputation of the sponsors of the advertisement. *Id.* at 277-78. The advertisements in question here, like the ad in *Sullivan,* were not generated by the newspaper itself. However, unlike the advertisements in *Sullivan*, the advertisements here were reviewed by Freedom staff for accuracy. While the primary purpose of the advertisements in this case was for candidate Zavaletta to publicly express his personal opinions regarding the incumbent district attorney, the advertisements also named the private individuals who filed this lawsuit. I would analyze the issues by balancing the importance of public debate with the requirement that the advertisements be truthful.

## I. DEFAMATION CLAIM

Freedom moved for summary judgment on the basis that appellees' libel claims were not actionable because no defamatory statement was made concerning them. Freedom urged that the statements made in the advertisement concerning appellees were substantially true. I believe Freedom met its summary judgment burden in this regard. Because the appellees are private individuals, they must prove that Freedom: (1) published a statement; (2) that was defamatory about the *plaintiff;* and (3) while acting with negligence with regard to the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Freedom, as the defendant moving for summary judgment, must either conclusively negate at least one of the essential elements of a cause of action or conclusively establish each element of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

4

A statement is not defamatory if it is true or substantially true. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex. 1990). An analysis of whether a publication is substantially true turns on whether the statement is more damaging to the plaintiff's reputation than a truthful statement would have been. *Id.* at 16. An evaluation involves looking at the "gist" of the advertisement. *Id.* An allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based on how a person of ordinary intelligence would perceive it. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000). The clear "gist" of the advertisements here allowed candidate Zavaletta to express his personal opinion that the incumbent district attorney was not doing his job. But, the statements made in the advertisements with regard to the appellees were not expressions of Zavaletta' s opinion. They were statements of fact gathered from an official document. With respect to the appellees, the advertisements were true. They stated that appellees were accused of crimes concerning children. They were. The advertisements also stated that appellees' cases were declined at intake. They were.

Appellees' argued that the statements naming them were not complete because the advertisements did not state that appellees' cases were declined at intake because of either insufficient evidence in three of their cases or, with respect to the fourth appellee, there was some evidence of inappropriate activity, which the district attorney's office found insufficient to prove beyond a reasonable doubt. The inclusion of these facts may have resulted in a more complete political advertisement with respect to appellees' status, but the gist of the advertisement had much more to do with the perceived conduct of the incumbent district attorney rather than the one hundred individuals listed in the

5

advertisement. *See Green v. CBS, Inc.*, 286 F. 3d 281, 285 (5th Cir. 2002).

The majority suggests that one could reasonably infer from the advertisements that appellees committed crimes against children. Perhaps it is true that such an inference could be made. But, in our society such an inference should not be made as an accused is innocent until proven guilty. And, the actual statements made about the appellees in the advertisements were truthful. The advertisements did not say that appellees committed crimes against children. I do not believe that the possibility that a negative inference could be gleaned from otherwise truthful statements about these specific appellees destroys either its substantial truth or the protection afforded Freedom by the First Amendment. This Court has previously said that a negative inference will not support appellees' defamation claim. *Larson v. Family Violence and Sexual Assault Prevention Ctr.*, 64 S.W.3d 506, 515 (Tex. App.–Corpus Christi 2001, pet. denied). In *Larson*, the appellant contended that the appellee had suggested to the media that appellant was the cause for the media to report inferences that she was the sole reason for agency financial shortfalls. *Id.* This Court recognized that liability will not lie "for presenting a true account of events, regardless of what someone may infer from the account." *Id.*

Clearly, the political advertisements at issue here were not even specifically directed towards appellees as required by the case law for liability to attach. *Cox Tex. Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 433 (Tex. App.–Austin 2007, pet. denied) (citing *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966)). In other words, "[i]n order to entitle one to maintain an action for an alleged defamatory statement, it must appear he is the person with reference to whom the statement was made." *Newspapers, Inc. v. Matthews*, 161

6

Tex. 284, 339 S.W.2d 890, 893 (1960). The circumstances surrounding the political advertisements show that they are directed at the incumbent district attorney. Specifically, the advertisements refer to his past performance relating to the prosecution of crimes against children. The advertisements almost exclusively regarded the incumbent district attorney, and only mentioned appellees and many others to the extent that they were accused. The advertisements did not mention that appellees were either charged with or should have been charged with any crimes, and the advertisements did not say that appellees had any culpability in such crimes.

Freedom also moved for summary judgment on the basis that those portions of the political advertisements that did not reference appellees constituted statements of opinion rather than statements of objectively verifiable facts. Statements of opinion are not actionable under Texas law. *Carr*, 776 S.W.2d at 570. Whether a statement is an opinion or an actionable assertion of fact is a question of law for the court. *Id*. A statement is not actionable under the First Amendment in a case against a media defendant unless it is provable as false. *Milkovich v. Lorain Journal Co.,* 497 U.S., 19-20 (1990). And, a statement of "pure opinion" is not provable as false. *Yiamouyiannis v. Thompson*, 764 S.W.2d 338, 341 (Tex. App.–San Antonio 1988, writ denied) (stating that "pure opinion" is "not capable of proof one way or the other"). The political advertisements in this case are not news stories; rather, they are one political candidate's opinion about an important local political figure. The advertisements presented candidate Zavaletta's opinion that the incumbent district attorney was not doing his job with respect to the prosecution of crimes against children. Because the summary judgment evidence established that the advertisements are either true with respect to the appellees or substantially true assertions

7

of fact or opinions of Zavaletta, I would conclude summary judgment is proper on this basis. I would hold that the trial court erred by denying summary judgment on appellees's defamation claim.

## II. INVASION OF PRIVACY

Freedom moved for summary judgment on the basis that the political advertisements did not amount to an actionable public disclosure of private facts as a matter of law because the facts published: (1) do not concern any private facts concerning appellees; (2) are a substantially accurate description of public documents; (3) are newsworthy and of legitimate public concern; and (4) were not highly objectionable to a person of ordinary sensibilities. In Texas, an invasion-of-privacy claim has three elements: (1) publicity was given to matters concerning the plaintiff's private life; (2) publication of such facts would be highly offensive to a reasonable person of ordinary sensibilities; and (3) matters publicized are not of legitimate public concern. *Hogan v. Hearst Corp.*, 945 S.W.2d 246, 250 (Tex. App.–San Antonio 1997, no writ). Under Texas law pertaining to the tort of invasion of privacy for the public disclosure of embarrassing private facts, one's privacy is not invaded if the matter publicized is of legitimate public concern. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 472, 474-75 (Tex. 1995); *Indus. Found. of the South v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex. 1976). We decide "as a matter of law whether a . . . matter is of legitimate public concern." *Lowe v. Hearst Commc'ns, Inc.*, 487 F.3d 246, 250 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1345-46 (5th Cir. 1994)).[2] We construe this "newsworthiness" test broadly and may include

[2]*See also Nguyen v. Dallas Morning News, L.P.*, no. 2-06-298-CV, 2008 WL 2511183, at *4 (Tex. App.–Fort Worth June 19, 2008, no pet.) (mem. op.).

8

news in the sense of current events, commentary on public affairs, and other information "'embrac[ing] all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period.'" *Id.* at 250 (quoting *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980)).

Although "there is a presumption under Texas law that the public has no legitimate interest in private embarrassing facts" with respect to private persons, whether any matter falls within the purview of legitimate public concern depends upon the "factual context of each particular case, . . . the nature of the information[,] and the public's legitimate interest in its disclosure." *Doe*, 915 S.W.2d at 474. In balancing a person's right to privacy in regard to information of legitimate public concern, the Texas Supreme Court has stated that: "[I]t would be impossible to require [the media] to anticipate and take action to avoid every conceivable circumstance where a party might be subjected to the stress of some unpleasant or undesired notoriety without an unacceptable chilling effect on the media itself." *Id.*

Freedom printed political advertisements which mentioned persons accused of offenses against children and the challenger's opinion regarding the incumbent district attorney's handling of these types of cases. Criminal allegations related to misconduct against children are of legitimate public concern, so publication of these allegations against appellees does not violate their right to privacy. *See Lowe*, 487 F.3d at 250-52 (stating "there is legitimate public interest in facts tending to support an allegation of criminal activity, even if the prosecutor does not intend to pursue a conviction"); *Doe*, 915 S.W.2d at 472, 474-75 (affirming summary judgment for newspaper in invasion-of-privacy case

9

when article disclosed facts that were of legitimate public concern). Protection of children from abuse is of the utmost importance in Texas. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (recognizing the State's duty to protect the safety and welfare of children); *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 291-92 (Tex. 1996) (recognizing the legislature's strong policy and public's interest in protecting children from abuse); *Villarreal v. Harte-Hanks Commc'ns, Inc.*, 787 S.W.2d 131, 134 (Tex. App.–Corpus Christi 1990, writ denied) (noting that "child abuse is recognized as a burning issue"). Therefore, the fact that appellees were accused of committing crimes against children is of legitimate public concern and disclosing this information in the political advertisements did not violate their First Amendment right to privacy. I would hold that the trial court erred in denying Freedom's summary judgment motion on the ground that appellees had no claim for invasion of privacy as a matter of law.[3]

I would reverse the trial court's judgment and render judgment that appellees take nothing by their suit against Freedom.[4]

---

[3]I disagree with the majority's determination that Freedom waived its argument that it had established that the advertisements contained no details about appellees' personal lives. Freedom urged in its brief that the information about the appellees was obtained from an official government report. Freedom also argued that the document was an official record in its analysis of the fair report privilege. And, it is undisputed that there were no details contained in the advertisement regarding the appellees, other than the fact that each had been accused of crimes involving children.

[4] I express neither agreement nor disagreement with the majority's analysis of the fair report privilege. I do not think it is necessary to the final disposition of this appeal because Freedom established its right to summary judgment as a matter of law on the truth defense. *See* TEX. R. APP. P. 47.1.

For these reasons, I respectfully dissent.



ROSE VELA
Justice



Dissenting Opinion delivered and
filed this 13th day of August, 2009.