# IN THE SUPREME COURT OF TEXAS

═══════════

No. 11-0228

═══════════

BYRON D. NEELY, INDIVIDUALLY, AND BYRON D. NEELY, M.D., P.A.,
PETITIONERS,

v.

NANCI WILSON, CBS STATIONS GROUP OF TEXAS, L.P., D/B/A KEYE-TV, AND
VIACOM, INC., RESPONDENTS

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

═══════════════════════════════

JUSTICE LEHRMANN, dissenting to the denial of the motion for rehearing.

"Our liberty depends on the freedom of the press, and that cannot be limited without being lost." Letter from Thomas Jefferson to James Currie (Jan. 28, 1786), *in* 9 THE PAPERS OF THOMAS JEFFERSON: 1 NOV. 1785–22 JUNE 1786, at 239 (Julian P. Boyd ed., 1954). As the Court recognizes, this case concerns bedrock constitutional guarantees that protect the right to free speech and a free press. __ S.W.3d at __. The U.S. Supreme Court has said that the First Amendment "rests on the assumption that the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public, that a free press is a condition of a free society." *Associated Press v. United States*, 326 U.S. 1, 20 (1945). In turn, media reporting of investigations regarding matters of public concern is vital to a vigilant and active press. However, it is inherent in the nature of investigative reporting that some allegations will be reported that are later

discovered to be untrue. Shielding media defendants from defamation liability for accurately reporting such allegations is a critical and well-settled practice, yet the Court's opinion declines to recognize as a definitive statement of Texas law that "media reporting of third-party allegations under investigation is substantially true if the media accurately reports the allegations and the existence of any investigation." __ S.W.3d at __. Because I would grant rehearing in this case to clarify that this statement correctly describes Texas law, I respectfully express my dissent.

In a brief filed by numerous amici in support of Respondents' Motion for Rehearing, amici assert that the Court's opinion, albeit in dicta, mischaracterizes our holding in *McIlvain v. Jacobs*, 794 S.W.2d 14 (Tex. 1990). The Court's opinion describes our approach in *McIlvain* as "measur[ing] the truth of [reported] allegations . . . against the government investigation that found them to be true." __ S.W.3d at __. This language, coupled with the statement that "one is liable for republishing the defamatory statement of another," *id.* at __, may cause some to understand our holding in *McIlvain* too narrowly. In *McIlvain*, we considered a broadcast reporting that certain city employees were under investigation for alleged misconduct. 794 S.W.2d at 15. The broadcast also relayed specific allegations regarding the underlying misconduct. *Id.* We verified the substantial truth of the broadcast in several ways. First, we considered affidavits from the city's legal department "confirm[ing] the existence of the investigation." *Id.* at 16. Second, we relied on documented sworn statements from a city employee describing the alleged misconduct. *Id.* Finally, on those portions of the broadcast that presented the most direct accusations of misconduct, we measured the accusations against the findings of the investigation to establish their substantial truth. *See id.*

I would read *McIlvain*, as have the Fifth Circuit and several Texas courts of appeals, to support the proposition that when the gist of a media defendant's report is that allegations were made and those allegations are being investigated, proof that the allegations were in fact made and are in fact being investigated is sufficient to establish substantial truth. *E.g.*, *Green v. CBS, Inc.*, 286 F.3d 281, 283–84 (5th Cir. 2002); *Grotti v. Belo Corp.*, 188 S.W.3d 768, 775 (Tex. App.—Fort Worth 2006, pet. denied); *KTRK Television v. Felder*, 950 S.W.2d 100, 106 (Tex. App.—Houston [14th Dist.] 1997, no writ). The Court disagrees with this interpretation of *McIlvain* and notes only that "we do not foreclose the possibility that the gist of some broadcasts may merely be allegation reporting, such that one measure for the truth of the broadcast could be whether it accurately relayed the allegations of a third party." __ S.W.3d at __. I would go further and would affirmatively recognize the third-party allegation rule espoused by the Fifth Circuit and the Texas courts of appeals after *McIlvain* as an accurate statement of Texas law.[1]

As amici argue, media defendants should not hesitate to report on allegations that are under investigation for fear that those allegations may later be proven false. Because the Court's opinion may lead to uncertainty in this critical area of the law, and as a result may have a chilling effect on the press, I would grant rehearing. Accordingly, I respectfully dissent to the denial of Respondents' Motion for Rehearing.

---

[1] The Court's opinion notes that such a rule would not enable KEYE to prevail in light of the Court's determination that the gist of the broadcast at issue went beyond allegation reporting. __ S.W.3d at __. For the reasons expressed in the dissenting opinion in this case, I continue to disagree with the Court's characterization of the gist of the broadcast and its determination that a fact issue exists as to the substantial truth of the broadcast. However, that is not the basis of my dissent today. In any event, since the Court could reconsider the characterization of the gist of the broadcast on rehearing, it is possible that the merits of the third-party allegation rule would be reached if the motion for rehearing were granted.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** January 31, 2014

4