**FREEDOM COMMUNICATIONS, INC. d/b/a the Brownsville Herald and the Valley Morning Star, Appellant,**

v.

**Juan Antonio CORONADO, et al., Appellees.**

**No. 13–08–00628–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 14, 2009.

Brian G. Janis, Brownsville, John A. Bussian, III, Raleigh, NC, Christina Crozier, Jeffery T. Nobles, Haynes & Boone, Houston, for appellant.

Marc G. Rosenthal, Rosenthal & Watson, Charles L. Levy, Austin, for appellees.

Before Chief Justice VALDEZ and Justices GARZA and VELA.

## OPINION

Opinion by Justice GARZA.

In this interlocutory appeal, appellant, Freedom Communications, Inc. d/b/a the *Brownsville Herald* and the *Valley Morning Star* ("Freedom"), challenges the trial court's denial of its motion for summary judgment. Freedom, a newspaper publisher, was sued by appellees, Juan Antonio Coronado, Francisco Solis Ramirez, Roberto Rivera, III, and Ruben Contreras, for defamation and invasion of privacy arising out of political advertisements printed in Freedom's newspapers in February and March of 2008. On appeal, Freedom argues that the trial court erred by denying its motion for summary judgment because: (1) the fair report privilege, as provided at common law and by statute, bars the appellees' suit; (2) the advertisements at issue are substantially true; and (3) the appellees cannot establish the elements of invasion of privacy. We affirm.

## I. BACKGROUND

This case concerns a full-page newspaper advertisement taken out by the campaign of Peter Zavaletta, a candidate for District Attorney of Cameron County, Texas, in 2008. Different versions of the advertisement appeared in two newspapers published by Freedom—the *Brownsville Herald* and the *Valley Morning Star*—on the days leading up to the Texas Democratic primary election on March 4, 2008.

The advertisement, first printed on February 26, 2008 in both the *Herald* and the *Morning Star*, was prepared by an advertising agency hired by Zavaletta, and was intended to criticize the record of the incumbent District Attorney, Armando Villalobos. The advertisement stated in large type on the top of the page that " 'ARMANDO VILLALOBOS IS *AGAINST* OUR CHILDREN' " (emphasis in original). The left half of the page contained a chart entitled "Cases Involving Children (2007)" which consisted of five columns and 103 rows of data purportedly detailing the disposition of child-related cases by the Cameron County District Attorney's office in 2007. The chart included the following typical entries:

| CHARGE | NAME OF ACCUSED | CASE NO. | AGENCY | DISPOSITION |
|---|---|---|---|---|
| . . . | . . . | . . . | . . . | . . . |

| Sexual Abuse of Child | Francisco Solis Ramirez | Intake | Harlingen PD | Declined at Intake |
|---|---|---|---|---|
| . . . | . . . | . . . | . . . | . . . |
| Physical Abuse of Child | Ruben Contreras | Intake | Harlingen PD | Declined at Intake |
| . . . | . . . | . . . | . . . | . . . |
| Sexual Abuse of Child | Juan Antonio Coronado | Intake | Brownsville PD | Declined at Intake |
| . . . | . . . | . . . | . . . | . . . |
| Sexual Abuse of Child | Roberto Rivera, III | Intake | Laguna Vista PD | Declined at Intake |
| . . . | . . . | . . . | . . . | . . . |

The right half of the advertisement contained, in part, the following text:

> The District Attorney must always protect those who are unable to protect themselves, and always stand up for the weak, the defenseless, and for those with no voice.
>
> As these records from 2007 only establish, Armando Villalobos has invariably *stood against children* who have been sexually abused, sexually assaulted, or physically injured, and stood with those who would commit such heinous crimes.
>
> Armando Villalobos' record proves he is morally unfit for public office.
>
> . . . .
>
> As your District Attorney, my team and I will *aggressively prosecute* these cases and insist that the convicted be *incarcerated.*

(Emphases in original.)

A second version of the advertisement ran in the *Herald* on February 29, 2008. This version included only the initials of those individuals listed in the chart, such as the appellees, whose cases were declined at intake by the District Attorney's office. This second version also included a table summarizing the information provided in the chart:

ARMANDO VILLALOBOS' RECORD ON CHILDREN (2007)

| DISPOSITION | |
|---|---|
| Declined at Intake | 77 |
| Deferred Adjudication | 17 |
| Sent to Pretrial Diversion and Dismissed | 2 |
| Dismissed | 4 |
| Acquitted by Jury | 1 |
| Probation | 1 |
| Plea Bargained to Public Lewdness | 1 |
| **Incarcerations** | **0**[1] |
| TOTAL AMOUNT OF CASES | 103 |

(Emphasis in original.) Below the summary table was a sentence further distilling the information provided in the chart to its essence: *"In 103 cases involving crimes against children, Armando Villalobos couldn't even send one defendant to prison!"* (Emphasis in original.) This version of the advertisement ran again in the newspapers on March 2, 3, and 4.[2]

---

1. The line marked "Incarcerations" was printed in bold and in a larger typeface than the remainder of the summary table.

2. The version of the advertisement that ran on March 2 and 3 included the full names of all the individuals listed in the chart, like the February 26 version, but unlike the February 29 and March 4 versions.

On March 18, 2008, Coronado and Ramirez filed suit against Freedom, Zavaletta, and Yolanda De Leon, a board member of the Cameron County Children's Advocacy Center ("CCCAC"), asserting causes of action for invasion of privacy by disclosure, and defamation. An amended petition was later filed on September 23, 2008, adding Rivera and Contreras as plaintiffs and requesting exemplary damages.[3] The petitions specifically alleged that the advertisements contained false and defamatory statements of fact about the appellees, that the defendants acted negligently and maliciously, and that the appellees suffered injury as a result.

The petitions noted that the information contained in the "Cases Involving Children" chart that appeared in the advertisements was excerpted from a "Case Disposition Report" originally prepared by the District Attorney's office. According to the plaintiffs, De Leon obtained the report from the District Attorney's office in her capacity as a CCCAC board member, and she then provided the report to the Zavaletta campaign for use in the advertisement.[4] The plaintiffs contended in their petition that the information provided in the report

is, pursuant to the laws of the State of Texas, strictly confidential, and is not to be published for general or public information and every report (and the information set forth in such report) remains confidential when it is transmitted to the

CCCAC pursuant to the laws of the State of Texas, including Texas Family Code section 264.408.[5]

Freedom filed a motion for traditional summary judgment on April 11, 2008, arguing that it is entitled to judgment as a matter of law on all of the appellees' claims because, among other reasons: (1) the advertisements are protected by the common law and statutory fair report privilege; (2) the advertisements do not, as a matter of law, constitute an actionable public disclosure of private facts concerning appellees; and (3) the advertisements do not, as a matter of law, constitute an actionable defamation because they are "true or substantially true."[6] Accompanying Freedom's motion were affidavits by Juan Avila, an employee of the *Herald*, and Maribel Villarreal, an employee of the *Morning Star*. In their affidavits, both Avila and Villarreal stated that Zavaletta's advertising agency provided the Case Disposition Report to the respective newspapers in order to substantiate the factual allegations made in the advertisements. Avila further stated that:

Neither I nor anyone employed by *The Brownsville Herald* had knowledge of any inaccuracies in the political ads prior to the publication of the political advertisements. Neither I nor anyone employed by *The Brownsville Herald* had any reason to doubt the accuracy of any

3. The September 23, 2008 amended petition also added Edgar Israel Gonzalez and Juan Antonio Hernandez as plaintiffs. Gonzalez and Hernandez were later non-suited. Zavaletta and De Leon, the other defendants below, are not parties to this appeal.

4. The appellees note that De Leon herself had lost to Villalobos in a prior election for Cameron County District Attorney.

5. Section 264.408 of the Texas Family Code provides in part that any records used or

developed by the Department of Family and Protective Services are confidential and are not subject to public release, but may be released to "law enforcement agencies ... and other state agencies that provide services to children and families." TEX. FAM CODE ANN. § 264.408(a), (a)(1) (Vernon 2008).

6. Freedom later filed an amended motion for traditional summary judgment on October 29, 2008, making substantially the same arguments.

factual statements contained in the political ads.

Villarreal made a similar statement in her affidavit with respect to herself and employees of the *Morning Star*.

Attached to the affidavits were copies of the Case Disposition Report, which bore the name, letterhead, and seal of the District Attorney's office. It is undisputed that the information in the Case Disposition Report was used to compile the "Cases Involving Children" chart that appeared in the advertisements. The Case Disposition Report, like the chart in the advertisements, purportedly detailed the names, case numbers, charges, and dispositions of cases involving children in Cameron County in 2007. However, the Case Disposition Report included dozens more entries and provided more detailed information regarding each case as compared to the chart in the advertisements. For example, unlike the chart in the advertisements, the Case Disposition Report included columns entitled "Victim Name," "Jury/No Jury," and "SANE Y/N."[7] Further, the report contained more details regarding the reasons for the disposition of each particular case. For example, Ramirez's and Rivera's entries in the report stated that their cases were "Declined at intake due to insufficient evidence." Similarly, Contreras' entry stated "Declined insufficient evidence." Coronado's entry in the report contained an even more detailed description of the disposition of his case: "Declined on intake—while there is some evidence of inappropriate activity, there is not sufficient evidence of any criminal activity to prove beyond a reasonable doubt."

The appellees filed a response to Freedom's motion for summary judgment on November 14, 2008, arguing in part that:

(1) the statements in the advertisements are not "true or substantially true" because they are "misleading" and "omitted material facts"; (2) Freedom did not conclusively establish that its publication of the advertisements was privileged; and (3) Freedom did not conclusively negate the elements of invasion of privacy. Attached to the response were affidavits by the appellees, each stating as follows:

> Contrary to the advertisements published by The Brownsville Herald and Valley Morning Star that are the subject of this suit, I did not commit a heinous crime, or other crime, against a child. I was not charged with the crime set forth in the advertisements published by The Brownsville Herald and Valley Morning Star that are the subject of this suit, or any crime against a child. I was not a defendant in regard to a crime against a child.

The response also included an affidavit by Joe Krippel, a felony prosecutor with the District Attorney's office, stating that the "Case Disposition Report" used to create the chart in the Zavaletta advertisement is a "confidential" report provided to CCCAC on a monthly basis and is "not meant for public disclosure."

On November 26, 2008, after a hearing, the trial court denied Freedom's motion for traditional summary judgment. This accelerated interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(6) (Vernon 2008) (permitting appeal of an interlocutory order that "denies a motion for summary judgment that is based in whole or in part upon a claim against ... a member of the electronic or print media ... arising under the free speech or free press clause of the First Amendment to the United States Constitu-

---

**7.** "Jury/No Jury" referred to whether or not the particular suspect had a jury trial; "SANE Y/N" referred to whether or not the victim had been examined by a sexual assault nurse examiner.

tion, or Article I, Section 8, of the Texas Constitution, or Chapter 73," regarding libel); *see also* TEX.R.APP. P. 28.1(a).

## II. STANDARD OF REVIEW

We review a trial court's denial of a traditional motion for summary judgment under a de novo standard of review. *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 n. 7 (Tex.2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 290 n. 137 (Tex.2004)); *Alaniz v. Hoyt,* 105 S.W.3d 330, 345 (Tex.App.-Corpus Christi 2003, no pet.). To obtain relief via a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *Mowbray v. Avery,* 76 S.W.3d 663, 690 (Tex.App.-Corpus Christi 2002, pet. denied). To meet this burden, a defendant must either conclusively negate at least one of the essential elements of a cause of action or conclusively establish each element of an affirmative defense. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Tex. Monthly, Inc. v. Transam. Natural Gas Corp.,* 7 S.W.3d 801, 805 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

In deciding whether there is a disputed fact issue that precludes summary judg-

ment, evidence favorable to the non-movant will be taken as true. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985)). Evidence favorable to the movant, however, will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Moreover, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Grinnell,* 951 S.W.2d at 425 (citing *Nixon,* 690 S.W.2d at 549).

## III. DISCUSSION

### A. Fair Report Privilege

 The fair report privilege is a common law defense to defamation rooted in First Amendment jurisprudence. *See* U.S. CONST. amend. I; *Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 490–91, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).[8] The privilege protects the publication of defamatory matter concerning another in a report of an official action or proceeding "if the report is accurate and complete or a fair abridgement of the occurrence reported." RESTATEMENT (SECOND) OF TORTS § 611 (1977).[9] "So long as the publication fairly and accurately reports the contents of the law enforcement statement without embellishment, the publication is privileged, even if

---

**8.** The privilege will also serve as an affirmative defense to an invasion of privacy claim. *See* RESTATEMENT (SECOND) OF TORTS § 652G, cmt. a (1977) ("Under any circumstances that would give rise to a conditional privilege for the publication of defamation, there is likewise a conditional privilege for the invasion of privacy.").

**9.** The United States Supreme Court has explained the policy behind the fair report privilege as follows:

> [I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his

government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations. Great responsibility is accordingly placed upon the news media to report fully and accurately the proceedings of government, and official records and documents open to the public are the basic data of governmental operations. Without the information provided by the press most of us and many of our representatives would be unable to vote intelligently or to register opinions on the administration of government generally.

*Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 491–92, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).

the underlying facts being reported on are untrue or defamatory." *Goss v. Houston Cmty. Newspapers,* 252 S.W.3d 652, 655 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (citing *Yohe v. Nugent,* 321 F.3d 35, 43–44 (1st Cir.2003); *Mathis v. Phila. Newspapers, Inc.,* 455 F.Supp. 406, 417 (E.D.Pa.1978); *Steer v. Lexleon, Inc.,* 58 Md.App. 199, 472 A.2d 1021, 1026–27 (1984)). In other words, the "accuracy" of the publication is determined not by comparing it to the actual facts, but to the law enforcement statement upon which the publication is based. *See Goss,* 252 S.W.3d at 655; *see also Freedom Comm'ns, Inc. v. Sotelo,* No. 11–05–00336–CV, 2006 WL 1644602, at *3, 2006 Tex.App. LEXIS 5132, at *9 (Tex.App.-Eastland June 5, 2006, no pet.) (mem. op.). Official statements from law enforcement agencies will trigger application of the privilege. *Goss,* 252 S.W.3d at 655.

▮ The privilege has also been codified in section 73.002 of the civil practice and remedies code, which applies to any "fair, true, and impartial account of . . . an official proceeding, other than a judicial proceeding, to administer the law" as well as any "reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information." Tex. Civ. Prac. & Rem.Code Ann. § 73.002(b)(1)(B), (b)(2) (Vernon 2005). A published account is "fair, true, and impartial" under the statute if it is a substantially correct account of a government record. *See Tex. Monthly,* 7 S.W.3d at 805 (citing *Crites v. Mullins,* 697 S.W.2d 715, 717 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.)). In determining whether the publication is substantially correct, we consider whether the statement was more damaging to the plaintiff's reputation in the mind of the average reader than a correct statement would have been. *Id.* (citing *Crites,* 697 S.W.2d at 717). If the effect on the mind of the recipient would be the same, any variance between the actions charged and the actions proved should be disregarded. *Id.* (citing *Finklea v. Jacksonville Daily Progress,* 742 S.W.2d 512, 515 (Tex.App.-Tyler 1987, writ dism'd w.o.j.); *Crites,* 697 S.W.2d at 717). That is, a publication that exaggerates an official report is nevertheless substantially correct "if an ordinary reader would not attach any more opprobrium to the plaintiff's conduct merely because of the exaggeration." *Id.* at 805–806.

▮ Where the facts are undisputed and the language used in the publication is not ambiguous, the question of privilege is ordinarily one of law for the court. *See Denton Publ'g Co. v. Boyd,* 460 S.W.2d 881, 884 (Tex.1970); *Christy v. Stauffer Publ'ns, Inc.,* 437 S.W.2d 814 (Tex.1969); *see also Sotelo,* 2006 WL 1644602, at *3, 2006 Tex.App. LEXIS 5132, at *8. However, the language used in the advertisements at issue here was not unambiguous. We find that an issue of material fact exists as to whether the privilege applies here.

▮ Two primary considerations lead us to this conclusion. First, although the "Cases Involving Children" chart that appeared in the advertisements faithfully reproduced parts of the Case Disposition Report prepared by the District Attorney's office, there were key omissions made that obscured the full meaning of the report. Specifically, the chart omitted the detailed information provided in the report regarding the specific reasons that the appellees' cases were declined by the District Attorney's office, such as the lack of evidence. Additionally, the chart suspiciously omitted some 34 entire entries that appeared in the report, the majority of which corresponded to cases where the District Attorney's office had pursued and obtained convictions. Without this information, the reader of the chart is justifiably left with

the impression that the District Attorney's office secured absolutely no convictions for child-related offenses in 2007; the reality, however, was different. Moreover, because the suspects who were actually convicted were omitted from the chart, readers of the advertisement may have been left with the impression that most of the individuals listed had actually committed the crimes they were accused of, which the report did not explicitly state.[10] In other words, the omissions may have made the chart more damaging to the appellees' reputations in the mind of the average reader than a full and complete reproduction of the report would have been. *See Tex. Monthly*, 7 S.W.3d at 805 (citing *Crites*, 697 S.W.2d at 717).

Second, the language that appeared adjacent to the chart on the right half of the advertisements was arguably misleading and unsupported by the information contained in the Case Disposition Report. Particularly questionable is the paragraph that reads: "*As these records from 2007 only establish*, Armando Villalobos has invariably **stood against children** who have been sexually abused, sexually assaulted, or physically injured, and stood with *those who would commit such heinous crimes*" (first and third emphases added; second emphasis in original). An average, ordinary reader of the advertisement would understand this paragraph to mean: (1) children have been sexually abused, sexually assaulted, or physically injured in Cameron County in 2007; (2) the suspects listed in the chart "would commit" the listed offenses against those children; and (3) the chart to the left of the text "estab-

lish[es]" those facts. However, the Case Disposition Report prepared by the District Attorney's office does not explicitly support these facts. Nowhere does the Case Disposition Report state that the listed suspects "would commit" the crimes of which they were accused. Instead, the report merely recites the disposition of all child-related cases in Cameron County, whether or not the cases turned out to be unsupported by evidence. Indulging every reasonable inference in favor of the appellees, *see Grinnell*, 951 S.W.2d at 425, we find that the advertisement "embellished" the Case Disposition Report in such a way that it was "more damaging" to the appellees' reputations than an unembellished report would have been. *See Goss*, 252 S.W.3d at 655; *Tex. Monthly*, 7 S.W.3d at 805; *see also* RESTATEMENT (SECOND) OF TORTS § 611 cmt. f. ("The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.").

Other language that is arguably unsupported by the Case Disposition Report is the following sentence, which appeared in the February 29, 2008 version and subsequent versions of the advertisements: "*In 103 cases involving crimes against children, Armando Villalobos couldn't even send one defendant to prison!*" (emphasis in original). It is true that none of the suspects listed in the "Cases Involving Children" chart were incarcerated; however, the chart did not list all of the child-

10. In their response to Freedom's first issue, the appellees also note that the Case Disposition Report contained "strictly confidential, non-public information, which ... remains confidential when it is transmitted to the CCCAC" and are "not public records at all." However, the fair report privilege statute does not require that a government report be "pub-

lic" in order for the privilege to apply. *See* TEX. CIV. PRAC & REM.CODE ANN. § 73.002 (Vernon 2005). We need not determine whether the Case Disposition Report was in fact "strictly confidential" because it has no bearing on the issue of whether the fair report privilege applies. *See* TEX R.APP. P. 47.1.

related cases disposed of by the District Attorney's office in 2007. In fact, as previously noted, the Case Disposition Report reflected that the District Attorney's office had actually disposed of 137 child-related cases in 2007, many of which eventually resulted in the suspect's conviction and incarceration. Additionally, the summary table included in some versions of the advertisement stated "TOTAL AMOUNT OF CASES ... 103." This statement is ambiguous in that it is unclear whether the figure refers to the total number of cases listed in the adjacent "Cases Involving Children" chart, or whether it refers to the total number of child-related cases disposed of by the District Attorney's office in 2007. Because of these ambiguities, we cannot say that Freedom established as a matter of law that the advertisement was a "substantially correct" account of the Case Disposition Report. *See Tex. Monthly,* 7 S.W.3d at 805 (citing *Crites,* 697 S.W.2d at 717).

Taking all evidence in favor of the appellees as true, *see Grinnell,* 951 S.W.2d at 425, we conclude that an issue of material fact remains as to whether the Zavaletta campaign advertisements were "fair, true, and impartial account[s]" of the Case Disposition Report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 73.002(b). Ac-

cordingly, Freedom did not meet its burden to establish its entitlement to judgment as a matter of law, and the trial court did not err in denying Freedom's motion for summary judgment on this basis.[11] *See* Tex.R. Civ. P. 166a(c); *Grant,* 73 S.W.3d at 215; *Mowbray,* 76 S.W.3d at 690. Freedom's first issue is overruled.

**B. Truth Defense**

Freedom argues by its second issue that the Zavaletta campaign advertisements "cannot be made the basis of a defamation suit" because the statements in those advertisements were true or substantially true as a matter of law.

Truth of the published statement is a complete defense to a defamation action and will support summary judgment.[12] Tex. Civ. Prac. & Rem.Code Ann. § 73.005 (Vernon 2005); *Randall's Food Mkts.,* 891 S.W.2d at 646; *see McIlvain v. Jacobs,* 794 S.W.2d 14, 15–16 (Tex.1990). A communication will be considered true for purposes of the truth defense if it is substantially true at the time the statement is made. *See, e.g., City of Brownsville v. Pena,* 716 S.W.2d 677, 682 (Tex. App.-Corpus Christi 1986, no writ). When determining whether a statement is "substantially true," we ask if it is no more

---

11. Freedom further argues by its first issue that it conclusively negated the contention made by the appellees that it acted with malice in publishing the Zavaletta campaign advertisements.

Both the common law and statutory fair report privileges are qualified privileges in that they are lost if the defendant's publication is made with malice. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). Therefore, to successfully invoke the privilege at the summary judgment stage, the defendant "must conclusively establish that the allegedly defamatory statement was made with an absence of malice." *Id.; see Martin v. Sw. Elec. Power Co.,* 860 S.W.2d 197, 199 (Tex.App.-Texarkana 1993, writ de-

nied); *see also Freedom Comm'ns, Inc. v. Sotelo,* No. 11–05–00336–CV, [2006 WL 1644602, at *5] 2006 Tex.App. LEXIS 5132, at *14 (Tex.App.-Eastland June 5, 2006, no pet.) (mem. op.).

We need not address this issue here, however, because we have already determined that Freedom has failed to conclusively establish its entitlement to the protection of the privilege such as would support summary judgment in its favor. *See* Tex.R.App P. 47.1.

12. On the other hand, truth cannot serve as a defense to the appellees' claim of invasion of privacy by disclosure. *See Doe v. Star Telegram,* 864 S.W.2d 790, 792 n. 1 (Tex.App.-Fort Worth 1993), *rev'd on other grounds,* 915 S.W.2d 471 (Tex.1995).

damaging to the plaintiff in the mind of the average reader than a true statement would have been. *See McIlvain,* 794 S.W.2d at 15–16. Minor inaccuracies will not constitute falsity so long as "the substance, the gist, the sting, of the libelous charge" is justified. *Masson v. New Yorker Magazine,* 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). When a defamation action is brought by a private plaintiff, as here, the defendant bears the burden of proving that the allegedly defamatory statements were true. *Randall's Food Mkts.,* 891 S.W.2d at 646 (citing *Town of South Padre Island v. Jacobs,* 736 S.W.2d 134, 140 (Tex.App.-Corpus Christi 1986, writ denied)).

As discussed above, Freedom has not conclusively established that the Zavaletta campaign advertisement was a substantially correct account of the Case Disposition Report. We find further that Freedom has failed to establish as a matter of law that the advertisement is substantially true. One could reasonably infer from the advertisement that the appellees committed crimes against children, and we are bound to indulge every reasonable inference in favor of the appellees in determining whether an issue of material fact exists. *See Grinnell,* 951 S.W.2d at 425.

▮▮▮ It is also important to note that a publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even if all the publication's individual statements considered in isolation are literally true or non-defamatory. *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex.2000); *Entravision Comm'ns Corp. v. Belalcazar,* 99 S.W.3d 393, 398 (Tex.App.-Corpus Christi 2003, pet. denied); *cf. Provencio v. Paradigm Media, Inc.,* 44 S.W.3d 677, 681 (Tex.App.-El Paso 2001, no pet.)

(stating that "the implications of a true statement, however unfortunate, do not vitiate the defense of truth"). Here, the juxtaposition of the language on the right side of the advertisement with the chart on the left side gave a strong impression that those listed in the chart had in fact committed crimes against children but were not prosecuted. Taking all evidence in favor of the appellees as true, *see Grinnell,* 951 S.W.2d at 425, we must conclude that this juxtaposition conveyed a false and defamatory meaning that was more damaging to the appellees than a true statement would have been. *See McIlvain,* 794 S.W.2d at 15–16.

Because an issue of material fact exists as to whether the advertisements at issue here are substantially true, Freedom has not established that it is entitled to judgment as a matter of law on the basis of this affirmative defense. Therefore, Freedom's second issue is overruled.

## C. Invasion of Privacy by Disclosure

▮▮▮ By its third issue, Freedom contends that the trial court erred in denying its motion for summary judgment with respect to the appellees' invasion of privacy claim based on public disclosure of private facts. In order to recover damages for this tort, the appellees must prove that: (1) publicity was given to matters concerning the appellees' private life[13]; (2) the matter publicized is not of legitimate public concern; and (3) the publication of those matters would be highly offensive to a reasonable person of ordinary sensibilities. *Indus. Found. of the South v. Tex. Indus. Accident Bd.,* 540 S.W.2d 668, 682 (Tex.1976).

---

**13.** The disclosure of facts that are a matter of public record will not give rise to a public disclosure invasion of privacy claim. *See Cohn,* 420 U.S. at 494–95, 95 S.Ct. 1029 (noting that "the interests in privacy fade when the information involved already appears on the public record").

■ Freedom argues that it conclusively negated all three of the essential elements of the appellees' invasion of privacy claim. First, it contends that it conclusively established that the information included in the advertisements was of "legitimate public concern" because it discussed "alleged criminal activity" in Cameron County. "The determination whether a given matter is one of legitimate public concern must be made in the factual context of each particular case, considering the nature of the information and the public's legitimate interest in its disclosure." *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474–75 (Tex.1995). Freedom notes that the Fifth Circuit has held that "there is a legitimate public interest in facts tending to support an allegation of criminal activity, even if the prosecutor does not intend to pursue a conviction." *Lowe v. Hearst Comm'ns, Inc.*, 487 F.3d 246, 250–52 (5th Cir.2007) (applying Texas law) (citing *Cinel v. Connick*, 15 F.3d 1338, 1345–46 (5th Cir.1994)). However, the advertisements at issue here did not disclose any underlying facts that would *support* an allegation of criminal activity against the appellees. Rather, the advertisements stated only that such allegations were *in fact made* against the appellees and were subsequently reported to the District Attorney's office. While underlying facts reflecting criminal activity can certainly be of legitimate public interest, Freedom

points to no authority, and we find none, holding that the public has a legitimate interest in the mere fact that an individual has been accused of a crime.[14] Absent such authority, we cannot say that the information contained in the advertisement was of "legitimate public concern" as a matter of law. *See Indus. Found. of the South*, 540 S.W.2d at 682.

Freedom also asserts that it conclusively established that the advertisements (1) "contain no details about appellees' 'personal lives'" and (2) are not "highly offensive to a reasonable person." However, Freedom provides this Court with no argument, authorities, or record citations to support these assertions. Accordingly, we consider them waived. *See* TEX.R.APP. P. 38.1(i).

We conclude that Freedom did not meet its burden to establish that it is entitled to judgment as a matter of law on the appellees' invasion of privacy claim. Accordingly, the trial court did not err in denying Freedom's motion for summary judgment on those grounds. *See* TEX.R. CIV. P. 166a(c). We overrule Freedom's third issue.

## IV. CONCLUSION

The trial court's denial of Freedom's motion for summary judgment is affirmed.

Dissenting Opinion by Justice ROSE VELA.

---

**14.** In arguing that the subject matter of the advertisements was "of legitimate public concern," the dissent notes that "[p]rotection of children from abuse is of the utmost importance in Texas" (citations omitted). By suggesting that the Court's decision today is somehow at odds with the goal of "[p]rotect[ing] children from abuse," the dissent has ironically—but unsurprisingly—employed the same type of moralistic intimidation that Zavaletta used to tar his opponent as complicit in child abuse.

Of course, this Court agrees with the general proposition that the protection of children

from abuse is a supreme public policy objective of this state. However, the dissent does not explain how the publication of mere accusations of child abuse without any supporting evidence, as is the case here, serves to advance this cause. The dissent also fails to recognize that by classifying a mere accusation of child abuse as an item "of legitimate public concern," it ignores the ideal which it espoused previously in the opinion—that is, that "an accused is innocent until proven guilty."

Dissenting Opinion by Justice VELA.

I dissent from the majority's opinion because I believe that Freedom established its right to summary judgment as a matter of law. First, I would hold that Freedom conclusively established that the statements made in the advertisements concerning the appellees were substantially true. Second, I believe that Freedom established as a matter of law that appellees may not recover on their invasion of privacy cause of action.

This libel action arose from the publication of political advertisements created by an advertising agency for a candidate hoping to unseat the incumbent district attorney of Cameron County, Texas. The advertisements and their later variations were published by Freedom Communications, Inc. ("Freedom") in two of its newspapers with circulation in the Rio Grande Valley. The scenario is somewhat unique because the defamation action was brought, not by the district attorney who was the focus of the political advertisements, but by four individual defendants named in some of the advertisements, who had each been accused of either physical or sexual abuse against children. The appellees were among more than one hundred individuals mentioned in the advertisements who had all been accused of crimes involving children.

In analyzing political advertisements, it is well settled that the core values of the First Amendment reflect a recognition of the "importance of the free flow of ideas and opinions or matters of public interest and concern." *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex.1989) (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 50,

108 S.Ct. 876, 99 L.Ed.2d 41 (1988)). The right to freedom of the press is in the First Amendment because this liberty is essential to the nature of a free society. Forbidding this liberty would place a chilling effect on political speech and would destroy the foundation of our free society.

Our state constitution expressly authorizes the bringing of reputational torts. *See* TEX. CONST. art. I, §§ 8, 13.[1] With respect to the granting of summary judgment in cases involving reputational torts, the supreme court noted in *Casso v. Brand*, " 'that summary judgment practice is particularly well-suited for the determination of libel actions, the fear of which can inhibit comment on matters of public concern.' " 776 S.W.2d 551, 558 (Tex.1989) (quoting *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 104 N.J. 125, 157, 516 A.2d 220 (1986)). The United States Supreme Court, in recognition of the special public interest in elected officials, stated that "the constitutional guarantee [of a free press] has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971).

Preservation of free expression is urgent in the political arena because an important purpose of the First Amendment is to ensure vigorous discussion of governmental issues. *See Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). It follows then that these protections should apply particularly in the arena of a paid political advertisement. In *New York Times v. Sullivan*, which concerned libel asserted by a public figure, one of the questions addressed was whether a consti-

---

1. Article 1, section 8 of the Texas Constitution provides that "[e]very person shall be at liberty to speak, write, or publish his opinions on any subject, *being responsible for the abuse of that privilege ....*" TEX. CONST. art. 1, § 8 (emphasis added). Section 13 provides that

"[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person, or *reputation* shall have remedy by due course of law." TEX. CONST. art. 1, § 13 (emphasis added).

tutionally protected advertisement forfeited some of the First Amendment protection by the falsity of some of the factual statements in the advertisement and its alleged defamation of the police commissioner. 376 U.S. 254, 271, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The United States Supreme Court determined that the advertisement was protected. Notably, in *Sullivan*, the advertisement was checked by no one at the newspaper before it was published; the advertising manager relied upon the reputation of the sponsors of the advertisement. *Id.* at 277–78, 84 S.Ct. 710. The advertisements in question here, like the ad in *Sullivan*, were not generated by the newspaper itself. However, unlike the advertisements in *Sullivan*, the advertisements here were reviewed by Freedom staff for accuracy. While the primary purpose of the advertisements in this case was for candidate Zavaletta to publicly express his personal opinions regarding the incumbent district attorney, the advertisements also named the private individuals who filed this lawsuit. I would analyze the issues by balancing the importance of public debate with the requirement that the advertisements be truthful.

## I. DEFAMATION CLAIM

Freedom moved for summary judgment on the basis that appellees' libel claims were not actionable because no defamatory statement was made concerning them. Freedom urged that the statements made in the advertisement concerning appellees were substantially true. I believe Freedom met its summary judgment burden in this regard. Because the appellees are private individuals, they must prove that Freedom: (1) published a statement; (2) that was defamatory about the *plaintiff*; and (3) while acting with negligence with regard to the truth of the statement. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998). Freedom, as the defendant moving for summary judgment,

must either conclusively negate at least one of the essential elements of a cause of action or conclusively establish each element of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995).

A statement is not defamatory if it is true or substantially true. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990). An analysis of whether a publication is substantially true turns on whether the statement is more damaging to the plaintiff's reputation than a truthful statement would have been. *Id.* at 16. An evaluation involves looking at the "gist" of the advertisement. *Id.* An allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based on how a person of ordinary intelligence would perceive it. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000). The clear "gist" of the advertisements here allowed candidate Zavaletta to express his personal opinion that the incumbent district attorney was not doing his job. But, the statements made in the advertisements with regard to the appellees were not expressions of Zavaletta's opinion. They were statements of fact gathered from an official document. With respect to the appellees, the advertisements were true. They stated that appellees were accused of crimes concerning children. They were. The advertisements also stated that appellees' cases were declined at intake. They were.

Appellees' argued that the statements naming them were not complete because the advertisements did not state that appellees' cases were declined at intake because of either insufficient evidence in three of their cases or, with respect to the fourth appellee, there was some evidence of inappropriate activity, which the district attorney's office found insufficient to prove beyond a reasonable doubt. The inclusion

of these facts may have resulted in a more complete political advertisement with respect to appellees' status, but the gist of the advertisement had much more to do with the perceived conduct of the incumbent district attorney rather than the one hundred individuals listed in the advertisement. *See Green v. CBS, Inc.,* 286 F.3d 281, 285 (5th Cir.2002).

The majority suggests that one could reasonably infer from the advertisements that appellees committed crimes against children. Perhaps it is true that such an inference could be made. But, in our society such an inference should not be made as an accused is innocent until proven guilty. And, the actual statements made about the appellees in the advertisements were truthful. The advertisements did not say that appellees committed crimes against children. I do not believe that the possibility that a negative inference could be gleaned from otherwise truthful statements about these specific appellees destroys either its substantial truth or the protection afforded Freedom by the First Amendment. This Court has previously said that a negative inference will not support appellees' defamation claim. *Larson v. Family Violence and Sexual Assault Prevention Ctr.,* 64 S.W.3d 506, 515 (Tex. App.-Corpus Christi 2001, pet. denied). In *Larson,* the appellant contended that the appellee had suggested to the media that appellant was the cause for the media to report inferences that she was the sole reason for agency financial shortfalls. *Id.* This Court recognized that liability will not lie "for presenting a true account of events, regardless of what someone may infer from the account." *Id.*

Clearly, the political advertisements at issue here were not even specifically directed towards appellees as required by the case law for liability to attach. *Cox Tex. Newspapers, L.P. v. Penick,* 219 S.W.3d 425, 433 (Tex.App.-Austin 2007,

pet. denied) (citing *Rosenblatt v. Baer,* 383 U.S. 75, 81, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966)). In other words, "[i]n order to entitle one to maintain an action for an alleged defamatory statement, it must appear he is the person with reference to whom the statement was made." *Newspapers, Inc. v. Matthews,* 161 Tex. 284, 339 S.W.2d 890, 893 (1960). The circumstances surrounding the political advertisements show that they are directed at the incumbent district attorney. Specifically, the advertisements refer to his past performance relating to the prosecution of crimes against children. The advertisements almost exclusively regarded the incumbent district attorney, and only mentioned appellees and many others to the extent that they were accused. The advertisements did not mention that appellees were either charged with or should have been charged with any crimes, and the advertisements did not say that appellees had any culpability in such crimes.

Freedom also moved for summary judgment on the basis that those portions of the political advertisements that did not reference appellees constituted statements of opinion rather than statements of objectively verifiable facts. Statements of opinion are not actionable under Texas law. *Carr,* 776 S.W.2d at 570. Whether a statement is an opinion or an actionable assertion of fact is a question of law for the court. *Id.* A statement is not actionable under the First Amendment in a case against a media defendant unless it is provable as false. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 19–20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). And, a statement of "pure opinion" is not provable as false. *Yiamouyiannis v. Thompson,* 764 S.W.2d 338, 341 (Tex.App.-San Antonio 1988, writ denied) (stating that "pure opinion" is "not capable of proof one way or the other"). The political advertisements in this case are not news stories; rather,

they are one political candidate's opinion about an important local political figure. The advertisements presented candidate Zavaletta's opinion that the incumbent district attorney was not doing his job with respect to the prosecution of crimes against children. Because the summary judgment evidence established that the advertisements are either true with respect to the appellees or substantially true assertions of fact or opinions of Zavaletta, I would conclude summary judgment is proper on this basis. I would hold that the trial court erred by denying summary judgment on appellees's defamation claim.

## II. INVASION OF PRIVACY

Freedom moved for summary judgment on the basis that the political advertisements did not amount to an actionable public disclosure of private facts as a matter of law because the facts published: (1) do not concern any private facts concerning appellees; (2) are a substantially accurate description of public documents; (3) are newsworthy and of legitimate public concern; and (4) were not highly objectionable to a person of ordinary sensibilities. In Texas, an invasion-of-privacy claim has three elements: (1) publicity was given to matters concerning the plaintiff's private life; (2) publication of such facts would be highly offensive to a reasonable person of ordinary sensibilities; and (3) matters publicized are not of legitimate public concern. *Hogan v. Hearst Corp.,* 945 S.W.2d 246, 250 (Tex.App.-San Antonio 1997, no writ). Under Texas law pertaining to the tort of invasion of privacy for the public disclosure of embarrassing private facts, one's privacy is not invaded if the matter publicized is of legitimate public concern. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 472, 474–75 (Tex.1995); *Indus. Found. of the South v. Tex. Indus.*

*Accident Bd.,* 540 S.W.2d 668, 682 (Tex. 1976). We decide "as a matter of law whether a . . . matter is of legitimate public concern." *Lowe v. Hearst Commc'ns, Inc.,* 487 F.3d 246, 250 (5th Cir.2007) (citing *Cinel v. Connick,* 15 F.3d 1338, 1345–46 (5th Cir.1994)).[2] We construe this "newsworthiness" test broadly and may include news in the sense of current events, commentary on public affairs, and other information " 'embrac[ing] all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period.' " *Id.* at 250 (quoting *Campbell v. Seabury Press,* 614 F.2d 395, 397 (5th Cir.1980)).

Although "there is a presumption under Texas law that the public has no legitimate interest in private embarrassing facts" with respect to private persons, whether any matter falls within the purview of legitimate public concern depends upon the "factual context of each particular case, . . . the nature of the information[,] and the public's legitimate interest in its disclosure." *Doe,* 915 S.W.2d at 474. In balancing a person's right to privacy in regard to information of legitimate public concern, the Texas Supreme Court has stated that: "[I]t would be impossible to require [the media] to anticipate and take action to avoid every conceivable circumstance where a party might be subjected to the stress of some unpleasant or undesired notoriety without an unacceptable chilling effect on the media itself." *Id.*

Freedom printed political advertisements which mentioned persons accused of offenses against children and the challenger's opinion regarding the incumbent district attorney's handling of these types of cases. Criminal allegations related to misconduct against children are of legitimate public concern, so publication of these alle-

---

**2.** *See also Nguyen v. Dallas Morning News, L.P.,* no. 2–06–298–CV, 2008 WL 2511183, at *4 (Tex.App.-Fort Worth June 19, 2008, no pet.) (mem. op.).

gations against appellees does not violate their right to privacy. *See Lowe,* 487 F.3d at 250–52 (stating "there is legitimate public interest in facts tending to support an allegation of criminal activity, even if the prosecutor does not intend to pursue a conviction"); *Doe,* 915 S.W.2d at 472, 474–75 (affirming summary judgment for newspaper in invasion-of-privacy case when article disclosed facts that were of legitimate public concern). Protection of children from abuse is of the utmost importance in Texas. *See In re A.V.,* 113 S.W.3d 355, 361 (Tex.2003) (recognizing the State's duty to protect the safety and welfare of children); *Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 291–92 (Tex.1996) (recognizing the legislature's strong policy and public's interest in protecting children from abuse); *Villarreal v. Harte–Hanks Commc'ns, Inc.,* 787 S.W.2d 131, 134 (Tex. App.-Corpus Christi 1990, writ denied) (noting that "child abuse is recognized as a burning issue"). Therefore, the fact that appellees were accused of committing crimes against children is of legitimate public concern and disclosing this information in the political advertisements did not violate their First Amendment right to privacy. I would hold that the trial court erred in denying Freedom's summary judgment motion on the ground that appellees had no claim for invasion of privacy as a matter of law.[3]

I would reverse the trial court's judgment and render judgment that appellees take nothing by their suit against Freedom.[4]

For these reasons, I respectfully dissent.

---

3. I disagree with the majority's determination that Freedom waived its argument that it had established that the advertisements contained no details about appellees' personal lives. Freedom urged in its brief that the information about the appellees was obtained from an official government report. Freedom also argued that the document was an official record in its analysis of the fair report privilege. And, it is undisputed that there were no details contained in the advertisement regarding the appellees, other than the fact that each had been accused of crimes involving children.

4. I express neither agreement nor disagreement with the majority's analysis of the fair report privilege. I do not think it is necessary to the final disposition of this appeal because Freedom established its right to summary judgment as a matter of law on the .truth defense. *See* Tex R.App P. 47.1.