

# NUMBER 13-13-00525-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JUAN ANTONIO CORONADO, FRANCISCO
SOLIZ RAMIREZ, ROBERTO RIVERA III,
AND RUBEN CONTRERAS,                                          **Appellants,**

**v.**

FREEDOM COMMUNICATIONS,
INC. D/B/A THE BROWNSVILLE HERALD
AND VALLEY MORNING STAR,                                      **Appellee.**

### On appeal from the 357th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Chief Justice Valdez**

Appellants, Juan Antonio Coronado, Francisco Solis Ramirez, Roberto Rivera III,

and Ruben Contreras, appeal the trial court's grant of traditional summary judgment in

favor of appellee, Freedom Communications, Inc. d/b/a The Brownsville Herald and

Valley Morning Star. By three issues, appellants contend that trial court erred in concluding that no genuine issue of material fact exists regarding Freedom's claim of fair privilege, truth defense, and whether an allegedly defamatory advertisement addressed a legitimate public concern. We affirm.

## I. BACKGROUND

In a previous opinion that the Texas Supreme Court vacated, we set out the facts of this case as follows:

> This case concerns a full-page newspaper advertisement taken out by the campaign of Peter Zavaletta, a candidate for District Attorney of Cameron County, Texas, in 2008. Different versions of the advertisement appeared in two newspapers published by Freedom—the Brownsville Herald and the Valley Morning Star—on the days leading up to the Texas Democratic primary election on March 4, 2008.
>
> The advertisement, first printed on February 26, 2008 in both the Herald and the Morning Star, was prepared by an advertising agency hired by Zavaletta, and was intended to criticize the record of the incumbent District Attorney, Armando Villalobos. The advertisement stated in large type on the top of the page that "'ARMANDO VILLALOBOS IS AGAINST OUR CHILDREN'" (emphasis in original). The left half of the page contained a chart entitled "Cases Involving Children (2007)" which consisted of five columns and 103 rows of data purportedly detailing the disposition of child-related cases by the Cameron County District Attorney's office in 2007.

*Freedom Commc'ns, Inc. v. Coronado*, 296 S.W.3d 790, 793 (Tex. App.—Corpus Christi 2009), *vacated by Freedom Communs., Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012). The chart included entries concerning allegations of child abuse made against each appellant and included the agency and its disposition of the case. *Id.* In each case, the chart indicated that the dispositions regarding each appellant were "declined at intake." *Id.*

The right half of the advertisement contained, in part, the following text:

2

The District Attorney must always protect those who are unable to protect themselves, and always stand up for the weak, the defenseless, and for those with no voice.

As these records from 2007 only establish, Armando Villalobos has invariably stood against children who have been sexually abused, sexually assaulted, or physically injured, and stood with those who would commit such heinous crimes.

Armando Villalobos' record proves he is morally unfit for public office.

. . . .

As your District Attorney, my team and I will aggressively prosecute these cases and insist that the convicted be incarcerated.

A second version of the advertisement ran in the Herald on February 29, 2008. This version included only the initials of those individuals listed in the chart . . . whose cases were declined at intake by the District Attorney's office.

*Id.* at 794. The chart indicated that out of 103 cases where allegations of child abuse were made, Villalobos declined at intake to prosecute seventy-seven of those cases. *Id.*

Below the summary table was a sentence further distilling the information provided in the chart to its essence: "In 103 cases involving crimes against children, Armando Villalobos couldn't even send one defendant to prison!" (Emphasis in original.) This version of the advertisement ran again in the newspapers on March 2, 3, and 4.

On March 18, 2008, Coronado and Ramirez filed suit against Freedom, Zavaletta, and Yolanda De Leon, a board member of the Cameron County Children's Advocacy Center ("CCCAC"), asserting causes of action for invasion of privacy by disclosure, and defamation. An amended petition was later filed on September 23, 2008, adding Rivera and Contreras as plaintiffs and requesting exemplary damages. The petitions specifically alleged that the advertisements contained false and defamatory statements of fact . . . [and] that the defendants acted negligently and maliciously. . . .

Freedom filed a motion for traditional summary judgment on April 11, 2008, arguing that it [was] entitled to judgment as a matter of law on all of the . . . claims. . . . On November 26, 2008, after a hearing, the trial court denied Freedom's motion for traditional summary judgment. An accelerated interlocutory appeal followed.

3

*Id.* at 794–95.

After addressing the merits of Freedom's appellate arguments, this Court affirmed the trial court's denial of Freedom's motion for summary judgment. *Id.* at 802. In *Coronado*, 372 S.W.3d at 624, Freedom appealed our decision to the Texas Supreme Court, which stated the following:

> Freedom filed a petition for review in this Court and as part of its briefing provided a copy of a plea agreement filed in the United States District Court for the Southern District of Texas. The agreement shows that after the court of appeals issued its decision, [Abel] Limas [the judge who denied Freedom's motion for summary judgment] pleaded guilty to federal racketeering charges. He admitted in the plea that on May 8, 2008, he accepted $8,000 in cash for, in part, making rulings favorable to the plaintiffs in this case, including "denying [Freedom's] Summary Judgment [motion] on November 26th."

*Id.* at 623.

The Texas Supreme Court determined that "[t]he facts in the plea agreement show[ed] that Limas had an interest—an illegal interest, no less—in this case because he obtained a pecuniary gain as a direct result of his rulings, including his order denying Freedom's summary-judgment motion" and that Limas was therefore "disqualified and his discretionary ruling on the summary-judgment motion was void." *Id.* at 624. The court held that because Limas's order was void, it and this Court had no jurisdiction over the cause. *Id.* The supreme court vacated our judgment and opinion and sent the cause back to the trial court. *Id.*

Upon remand to the trial court, Freedom filed a Renewed Motion for Summary Judgment that the trial court denied. However, the trial court granted Freedom's Second Renewed Motion for Summary Judgment. This appeal followed.

4

## II.  STANDARD OF REVIEW

We review the granting of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.).  "[W]e take as true all evidence favorable to the non[-]movant, and we indulge every reasonable inference and resolve any doubts in the non[-]movant's favor."  *Valence Operating Co.*, 164 S.W.3d at 661.

In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.  *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing TEX. R. CIV. P. 166a(c)); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).  A defendant seeking a traditional motion for summary judgment must either disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of any affirmative defense.  *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Sanchez v. Matagorda County*, 124 S.W.3d 350, 352 (Tex. App.—Corpus Christi 2003, no pet.).

## III.  DEFAMATION

Statements that would be perceived by the audience as "rhetorical hyperbole" do not constitute defamation.  *American Broad. Cos. v. Gill*, 6 S.W.3d 19, 43 (Tex. App.—San Antonio 1999, pet. denied).  A statement must constitute or contain an assertion of an "objectifiably verifiable" fact in order to constitute actionable defamation. *Id.* (citing *Burch v. Coca–Cola Co.*, 119 F.3d 305, 325 (5th Cir.1997).  Rhetorical hyperbole is not

5

subject to objective verification; therefore, it is not provable as false and not actionable in a case against a media defendant. *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20 (1990)).

Whether a statement is rhetorical hyperbole, opinion, or an actionable assertion of fact is a question of law for the court. *Id.* at 30. "Rhetorical hyperbole" is "extravagant exaggeration" "employed for rhetorical effect." *Id.*

In its motion for summary judgment, Freedom argued that the political advertisements at issue constituted "rhetorical hyperbole" and opinion. On appeal, appellants do not address Freedom's summary judgment argument regarding rhetorical hyperbole and opinion. Therefore, the trial court's implied finding that the complained-of political ads constituted rhetorical hyperbole is not challenged on appeal. And, because rhetorical hyperbole is not subject to objective verification, provable as false, and actionable in a case against a media defendant, we must affirm the trial court's summary judgment regarding defamation on that basis. *See Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied) ("If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground.") (citing *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 875 (Tex. App.—Dallas 2005, no pet.) ("[A] reviewing court will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted.")).

We need not address appellants' first and second issues challenging other grounds for granting summary judgment as they are not dispositive because we have

concluded that one of the grounds for summary judgment supports the trial court's ruling.[1] *See* TEX. R. APP. P. 47.1.

### IV.    INVASION OF PRIVACY

By their third issue, appellants contend that the report in the advertisements setting out the allegations against them "did not disclose any underlying facts that would support an allegation of criminal activity against [them] because there are none." Especially given that the report states that there is "insufficient evidence of criminal activity." Appellants argue that the "public has no legitimate interest in the mere fact that an individual has been accused of a crime" and that "Freedom can bring this Court no facts of any criminal activity, which would satisfy the fact issue in granting a 'public interest' in this information."

When making an invasion of privacy claim, a plaintiff must prove the following: (1) publicity was given to matters concerning the plaintiff's private life; (2) publication of such facts would be highly offensive to a reasonable person of ordinary sensibilities; and (3) matters publicized are not of legitimate public concern. *Crumrine v. Harte-Hanks Television, Inc.*, 37 S.W.3d 124, 127 (Tex. App.—San Antonio 2001, pet. denied). "The determination whether a given matter is one of legitimate public concern must be made in the factual context of each particular case, considering the nature of the information and the public's legitimate interest in its disclosure." *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474–75 (Tex. 1995). "Whether a publication involves a matter of public concern is a question of law" that appellate courts review de novo. *Klentzman v. Brady*, 456 S.W.3d 239, 257 (Tex. App.—Houston [1st Dist.] 2014, pet. filed). "[S]peech on

---

[1] We note that in our previous opinion, Freedom had not argued that the political ads constituted rhetorical hyperbole, and we did not address that issue.

7

'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Id.* (citing *Snyder*, 131 S.Ct. at 1215 (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985) (plurality op.))). "Because 'speech concerning public affairs . . . is the essence of self-government,' the First Amendment protects such speech on the principle that 'debate on public issues should be uninhibited, robust, and wide-open.'" *Id.* "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community'" or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* at 258.

Moreover, "the activities of government officials and law enforcement personnel are matters of public concern." *Id.* (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 769, 776 (1986) (providing that the media defendant's assertions that a private businessman influenced the governmental processes through his links to organized crime constituted an issue of public concern)).

Here, Freedom provided evidence that the Cameron County District Attorney had apparently reduced its efforts to prosecute certain crimes listed in the reports. Freedom argued that the reports included in the ads were a legitimate public concern because public inquiry into prosecutorial discretion and public debate of the issue of public corruption is important in a democracy.[2] On appeal, appellants have not challenged the trial court's grant of Freedom's summary judgment on the basis that the advertisements addressed prosecutorial discretion and the acts of public officials. *See Jarvis*, 298 S.W.3d at 31. Moreover, because speech about prosecutorial discretion and dealing with matters

---

[2] In our previous opinion, Freedom did not make such an argument, and we did not address it.

8

of political issues constitute a public concern, the trial court did not err in granting Freedom's motion for summary judgment.[3] *See Klentzman*, 456 S.W.3d at 257–58. We overrule appellants' third issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
30th day of September, 2015.

---

[3] We note that regarding who has the burden to prove truth or falsity when the matter is of a public concern in a defamation suit, the United States Supreme Court stated the following:

> To ensure that true speech on matters of public concern is not deterred, we hold that the common-law presumption that defamatory speech is false cannot stand when a plaintiff seeks damages against a media defendant for speech of public concern.
>
> . . . .
>
> Because such a "chilling" effect would be antithetical to the First Amendment's protection of true speech on matters of public concern, we believe that a private-figure plaintiff must bear the burden of showing that the speech at issue is false before recovering damages for defamation from a media defendant. To do otherwise could "only result in a deterrence of speech which the Constitution makes free."

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 769, 776–77 (1986).